# EXHIBIT A

PLD-C-001

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):<br>Jedediah Wakefield (CSB No. 178058)<br>Henry Z. Carbajal III (CSB No. 237951)<br>Fenwick & West LLP<br>555 California Street, 12th Floor, San Francisco, CA 94102<br>TELEPHONE NO: (415) 281-1350            FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Zynga Game Network, Inc. | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civil-Unlimited

PLAINTIFF: Zynga Game Network, Inc.

DEFENDANT: CLZ Concepts d/b/a Aftershock Innovations LLC, Jeff Chen and James Zhang

☐ DOES 1 TO _____

**F I L E D**
Superior Court of California,
County of San Francisco

JAN 3 0 2009
GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET
JUL 2 - 2009 - 9:00 AM
DEPARTMENT 212

| CONTRACT | |
|---|---|
| ☑ COMPLAINT | ☐ AMENDED COMPLAINT (Number): |
| ☐ CROSS-COMPLAINT | ☐ AMENDED CROSS-COMPLAINT (Number): |

SUMMONS ISSUED

**Jurisdiction** (check all that apply):
☐ ACTION IS A LIMITED CIVIL CASE
   Amount demanded   ☐ does not exceed $10,000
                         ☐ exceeds $10,000 but does not exceed $25,000
☑ ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
☐ ACTION IS RECLASSIFIED by this amended complaint or cross-complaint
     ☐ from limited to unlimited
     ☐ from unlimited to limited

CASE NUMBER:
CGC- 09-484557

1. Plaintiff* (name or names):
Zynga Game Network, Inc.
alleges causes of action against defendant* (name or names):
CLZ Concepts, Jeff Chen and James Zhang

2. This pleading, including attachments and exhibits, consists of the following number of pages: 5

3. a. Each plaintiff named above is a competent adult
    ☑ except plaintiff (name): Zynga Game Network, Inc.
       (1) ☑ a corporation qualified to do business in California
       (2) ☐ an unincorporated entity (describe):
       (3) ☐ other (specify):

  b. ☐ Plaintiff (name):
    a. ☐ has complied with the fictitious business name laws and is doing business under the fictitious name (specify):

    b. ☐ has complied with all licensing requirements as a licensed (specify):
  c. ☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.

4. a. Each defendant named above is a natural person
    ☑ except defendant (name): CLZ Concepts       ☐ except defendant (name):
      (1) ☐ a business organization, form unknown   (1) ☐ a business organization, form unknown
      (2) ☐ a corporation                       (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):    (3) ☐ an unincorporated entity (describe):
      (4) ☐ a public entity (describe):          (4) ☐ a public entity (describe):
      (5) ☑ other (specify): Partnership        (5) ☐ other (specify):

*If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
PLD-C-001 [Rev. January 1, 2007]

**COMPLAINT—Contract**

Code of Civil Procedure, § 425.12

American LegalNet, Inc.
www.FormsWorkflow.com

PLD-C-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Zynga Game Network, Inc. v. CLZ Concepts, et al. | |

4.  *(Continued)*

    b. The true names of defendants sued as Does are unknown to plaintiff.

      (1) ☐ Doe defendants *(specify Doe numbers):* _____ were the agents or employees of the named
          defendants and acted within the scope of that agency or employment.

      (2) ☐ Doe defendants *(specify Doe numbers):* _____ are persons whose capacities are unknown to
          plaintiff.

    c. ☐ Information about additional defendants who are not natural persons is contained in Attachment 4c.

    d. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

5.  ☐ Plaintiff is required to comply with a claims statute, and

    a. ☐ has complied with applicable claims statutes, or

    b. ☐ is excused from complying because *(specify):*

6.  ☐ This action is subject to    ☐ Civil Code section 1812.10    ☐ Civil Code section 2984.4.

7.  This court is the proper court because

    a. ☑ a defendant entered into the contract here.

    b. ☐ a defendant lived here when the contract was entered into.

    c. ☐ a defendant lives here now.

    d. ☑ the contract was to be performed here.

    e. ☑ a defendant is a corporation or unincorporated association and its principal place of business is here.

    f. ☐ real property that is the subject of this action is located here.

    g. ☐ other *(specify):*

8.  The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*

    ☑ Breach of Contract

    ☐ Common Counts

    ☑ Other *(specify):*
       Unfair Competition in violation of Cal. Bus. and Prof. Code Section 17200 (See attachment at pg. 5)

9.  ☐ Other allegations:

10. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for

    a. ☐ damages of: $

    b. ☐ interest on the damages
      (1) ☐ according to proof
      (2) ☐ at the rate of *(specify):*     percent per year from *(date):*

    c. ☑ attorney's fees
      (1) ☐ of: $
      (2) ☑ according to proof.

    d. ☑ other *(specify):*
       Preliminary and permanent injunctive relief enjoining breach of contracts and unfair competition.

11. ☑ The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers):*
       Paragraph 1

Date: January 30, 2009

Jedediah Wakefield
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

PLD-C-001 [Rev. January 1, 2007]

**COMPLAINT—Contract**

PLD-C-001(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Zynga Game Network, Inc. v. CLZ Concepts, et al. | |

First _____     CAUSE OF ACTION—Breach of Contract
(number)

ATTACHMENT TO   [✓] Complaint   [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name)*:  Zynga Game Network, Inc. (corporate successor to Presidio Media, Inc.)

alleges that on or about *(date)*: February 4, 2008
a [✓] written [ ] oral [ ] other *(specify)*:
agreement was made between *(name parties to agreement)*:
Presidio Media, Inc., CLZ Concepts, Jeff Chen, Linus Liang and James Zhang
[ ] A copy of the agreement is attached as Exhibit A, or
[✓] The essential terms of the agreement [✓] are stated in Attachment BC-1 [ ] are as follows *(specify)*:

BC-2. On or about *(dates)*: November 2008-January 2009
defendant breached the agreement by [ ] the acts specified in Attachment BC-2 [✓] the following acts
*(specify)*:
On or about November 2008, Defendants CLZ Concepts, Jeff Chen and James Zhang began
doing business as Aftershock Innovations LLC. Defendants are currently and have been
developing, marketing and distributing software on social-networking platforms and/or software
that has functions and/or features similar to software applications Plaintiff purchased from
Defendants.

BC-3. Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or
excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
[ ] as stated in Attachment BC-4 [✓] as follows *(specify)*:
Loss of marketshare and opportunities which cannot be adequately remedied at law, and
continuing costs and legal fees in an amount subject to proof.

BC-5. [✓]  Plaintiff is entitled to attorney fees by an agreement or a statute
[ ] of $
[✓] according to proof.

BC-6. [✓]  Other:
Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to Sections 4.2.1 and
8.11 of the parties' February 4, 2008 Asset Purchase Agreement, Sections 7(a), 7(d), 7(e) and 11
of the February 4, 2008 employment agreements between Plaintiff and Jeff Chen and James
Zhang, respectively, California Code of Civil Procedure Section 526(a) and California Business
and Professions Code Section 16601.

Page   3

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(1) [Rev. January 1, 2007]     CAUSE OF ACTION—Breach of Contract     Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

Zynga Game Network, Inc. v. CLZ Concepts, et al.—Page 4 of 5

**Attachment BC-1 to First Cause of Action for Breach of Contract:**

In connection with an agreement that Presidio Media, Inc. (now Zynga Game Network, Inc.) would purchase the assets and goodwill of the business comprising the development and distribution of software applications social-networking platforms operated by CLZ Concepts, Jeff Chen, James Zhang and Linus Liang, the Defendants agreed in Section 4.2.1 of the parties' February 4, 2008 Asset Purchase Agreement not to engage in a "Competing Business" for two years following the Agreement's closing date. Pursuant to Section 4.2.1 of the Asset Purchase Agreement, a "Competing Business" means:

(i) for purposes of the first year immediately following the Closing Date, any business consisting of any of the following: (A) the development, marketing or distribution of applications for the Facebook platform or other social-networking platforms or (B) the development, marketing or distribution of software applications that have functions and/or features similar to those of the Purchased Applications; and (ii) for purposes of the second year immediately following the Closing Date, the development, marketing or distribution of applications for the Facebook platform or other social-networking platforms that have functions and/or features substantially similar to those developed, marketed or distributed by the Purchaser or otherwise available on the Purchaser's network.

In conjunction with the Asset Purchase Agreement, Defendants Jeff Chen and James Zhang each signed employment agreements with Presidio Media, Inc. (now Zynga Game Network, Inc.) each dated February 4, 2008. In Section 7(a)(i) of the employment agreement with Jeff Chen and Section 7(a)(i) of the employment agreement with James Zhang, respectively, Mr. Chen and Mr. Zhang each agreed that for two years following their Agreement's closing date they would not directly or indirectly:

participate or engage in the design, development, manufacture, production, marketing, sale or servicing of any product of, or otherwise engage in the provision of any services to, any person or entity that engages in a business that is Directly Competitive (as defined below) in any Restricted Territory (as defined below) . . . .

Section 7(b)(ii) of the employment agreement with Jeff Chen and Section 7(b)(ii) of the employment agreement with James Zhang, respectively, defines "Directly Competitive" to mean:

(A) for purposes of the first year of the Restrictive Period, (1) developing, marketing or distributing software applications that have functions and/or features similar to those of the Purchased Applications or (2) developing, marketing or distributing applications for the Facebook platform or other social-networking platforms; and (B) for purposes of the second year of the Restrictive Period, developing, marketing or distributing applications for the Facebook platform or other social-networking platforms that have functions and/or features substantially similar to those developed, marketed or distributed by the Company or otherwise available on the Company's network.

Zynga Game Network, Inc. v. CLZ Concepts, et al.—Page 5 of 5

## SECOND CAUSE OF ACTION FOR UNFAIR COMPETITION AGAINST DEFENDANTS CLZ CONCEPTS, JEFF CHEN AND JAMES ZHANG

**UC-1.** Plaintiff incorporates by reference paragraphs 1 – 11 and BC-1 through BC-6 inclusive, as though fully set forth herein.

**UC-2** By the acts alleged herein, Defendants have engaged in unfair competition including unlawful business practices, in violation of Plaintiff's rights and in violation of Cal. Bus. & Prof. Code Sections 17200, *et seq.* and the common law.  Specifically, all Defendants have engaged in unlawful behavior constituting unfair competition by breaching CLZ Concepts', Jeff Chen's and James Zhang's contractual and legal obligations not to compete against Plaintiff pursuant to Section 4.2.1 of the parties' February 4, 2008 Asset Purchase Agreement, Sections 7(a)(i)-(ii) of the February 4, 2008 employment agreements between Plaintiff and Jeff Chen and James Zhang, respectively, and California Business and Professions Code Section 16601.

**UC-3.** As a direct and foreseeable result of Defendants' violation of Business and Professions Code Section 17200, Plaintiff has suffered and will continue to suffer irreparable harm, including but not limited to further breach of Defendants' contractual and legal obligations not to compete against Plaintiff pursuant to Section 4.2.1 of the parties' February 4, 2008 Asset Purchase Agreement, Sections 7(a)(i)-(ii) of the February 4, 2008 employment agreements between Plaintiff and Jeff Chen and James Zhang, respectively, and California Business and Professions Code Section 16601.  Plaintiff is informed and believes, and based thereon alleges, that unless they are enjoined, CLZ Concepts, Jeff Chen and James Zhang will continue to inflict great and irreparable harm against Plaintiff.

# EXHIBIT B

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CLZ CONCEPTS, a California partnership, d/b/a Aftershock Innovations LLC, JEFF CHEN and JAMES ZHANG

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ZYNGA GAME NETWORK, INC., a Delaware corporation

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

CASE NUMBER:
*(Número del Caso):*
09-484555

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California
County of San Francisco
400 McAllister Street, Room 205
San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jedediah Wakefield                                          (415) 875-2300
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104

DATE: January 30, 2009                  Clerk, by _____, Deputy
*(Fecha)*                                        *(Secretario)*                        *(Adjunto)*

GORDON PARK-LI

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Jedediah Wakefield (CSB No. 178060)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94102
TELEPHONE NO: (415) 875-2300    FAX NO.: (415) 281-1350 .
ATTORNEY FOR *(Name)*: Plaintiff, Zynga Game Network, Inc:

**F I L E D**
Superior Court of California,
County of San Francisco

JAN 3 0 2009

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street, Room 205
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME: Zynga Game Network, Inc. v. CLZ Concepts, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | CGC-.09-484557 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☒ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☐ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify)*: 2
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 30, 2009

Jedediah Wakefield
_____
*(TYPE OR PRINT NAME)*                                    *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only. Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

# EXHIBIT C

CASE NUMBER: CGC-09-484557  ZYNGA GAME NETWORK INC VS. CLZ CONCEPTS DBA AF

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

DATE:    JUL-02-2009

TIME:    9:00AM

PLACE:   Department 212
         400 McAllister Street
         San Francisco, CA  94102-3680

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.** (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

**See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges**

# EXHIBIT D

1   JEDEDIAH WAKEFIELD (CSB No. 178058)
    jwakefield@fenwick.com
2   JENNIFER L. KELLY (CSB No. 193416)
    jkelly@fenwick.com
3   FENWICK & WEST LLP
    555 California Street, 12th Floor
4   San Francisco, CA  94104
    Telephone:   (415) 875-2300
5   Facsimile:    (415) 281-1350

6   HENRY Z. CARBAJAL III (CSB No. 237951)
    hcarbajal@fenwick.com
7   FENWICK & WEST LLP
    Silicon Valley Center
8   801 California Street
    Mountain View, CA  94041
9   Telephone:   (650) 988-8500
    Facsimile:    (650) 938-5200
10  Attorneys for Plaintiff
    ZYNGA GAME NETWORK, INC.

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                    COUNTY OF SAN FRANCISCO

14

15  ZYNGA GAME NETWORK, INC., a            Case No. CGC-09-484557
    Delaware corporation,
16                                         **APPLICATION FOR TEMPORARY RESTRAINING**
                    Plaintiff,             **ORDER TO SHOW CAUSE RE PRELIMINARY**
17                                         **INJUNCTION**

18        v.                               Date:      February 3, 2009
                                           Time:      11:00 a.m.
19  CLZ CONCEPTS D/B/A AFTERSHOCK          Dept.:     301
    INNOVATIONS LLC, JEFF CHEN AND         Judge:     Hon. Peter Busch
20  JAMES ZHANG
                                           Date of Filing:   February 3, 2009
                    Defendants.            Trial Date:    No date set
21

22

23        Pursuant to California Code of Civil Procedure Sections 526 and 527, and Business and

24  Professions Code Sections 16601 and 17203, Zynga Game Network, Inc. ("Zynga") hereby

25  applies for a temporary restraining order and order to show cause why a preliminary injunction

26  should not issue to:

27  ///

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1       1.     Enjoin and restrain Defendants CLZ Concepts, Aftershock Innovations LLC, Jeff

2 Chen, James Zhang, and all officers, directors, employees, agents, or persons in active concert or

3 participation with any of them ("the Enjoined") from developing, marketing and distributing the

4 Mafia Live! game for use on the Apple iPhone, and further breaches of (1) the parties'

5 February 4, 2008 Asset Purchase Agreement, (2) Jeff Chen's February 6, 2008 Employment

6 Agreement with Zynga and (3) James Zhang's February 6, 2008 Employment Agreement with

7 Zynga.

8       2.     Require Defendants to take all necessary steps to preserve documents, data, tangible

9 things, and other discoverable materials that are known or reasonably likely to exist and are related

10 to the issues presented by this action, including but not limited to any current and/or archived

11 electronic logs, meta data, and directories (such as firewall logs, server logs, VPN and FTP logs,

12 e-mail boxes, repositories or archives) that reflect any transmissions between or among Defendants

13 and/or Zynga, or that reflect the development of the Mafia Live! game.

14       3.     Require the Enjoined to suspend any and all document retention or destruction

15 policies or practices with regard to any discoverable information (electronic, documentary, or

16 otherwise) in any media (paper, hard drives, caches, CD-ROMs, diskettes, or any other media).

17       4.     Require Defendants to appear on February 27, 2009 before the Court to show

18 cause, if any, why the injunction and restraints sought in Zynga's Application should not be

19 entered in the form of a preliminary injunction for the remainder of this action, together with any

20 other appropriate injunctive relief. Zynga respectfully requests that Defendants' opposition be

21 filed and served (either personally or electronically) by 5:00 p.m. on February 17, 2009, and

22 Zynga's reply papers, if any, be filed and served (either personally or electronically) by 5:00 p.m.

23 on February 23, 2009.

24     This Application is made on the following grounds:

25       1.     Zynga is being irreparably harmed by Defendants' breach of their covenants not to

26 compete against Zynga pursuant to Section 4.2.1 of the Asset Purchase Agreement and Sections

27 7(a)(i)-(ii) of Jeff Chen's and James Zhang's Employment Agreements with Zynga. Unless this

28 unlawful conduct is immediately stopped, Zynga will continue to suffer great irreparable harm.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Although Zynga is likely to succeed on the merits of its breach of contract and unfair competition

2    claims, legal remedies are inadequate to compensate the injury Defendants have caused Zynga by

3    their unlawful actions.

4         2.       Zynga has not made any previous application for similar relief.

5         This motion is based on this Application; Zynga's Complaint for Breach of Contract and

6    Unfair Competition; the Memorandum in Support of Plaintiff Zynga's Application for Temporary

7    Restraining Order to Show Cause; the supporting declarations of Jedediah Wakefield, Andrew

8    Trader, Scott Dale and Kyle McEachern; the [Proposed] Temporary Restraining Order and Order

9    to Show Cause; and such evidence as shall be presented at any hearing this Court shall allow.

10    Dated: February 3, 2009                  FENWICK & WEST LLP

11

12                                 By:

                                        Jedediah Wakefield

13

14                                 Attorneys for Plaintiff
                                ZYNGA GAME NETWORK, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT E

1   JEDEDIAH WAKEFIELD (CSB No. 178058)
    jwakefield@fenwick.com
2   JENNIFER L. KELLY (CSB NO. 193416)
    jkelly@fenwick.com
3   FENWICK & WEST LLP
    555 California Street, 12th Floor
4   San Francisco, CA  94104
    Telephone:   (415) 875-2300
5   Facsimile:    (415) 281-1350

6   HENRY Z. CARBAJAL III (CSB No. 237951)
    hcarbajal@fenwick.com
7   FENWICK & WEST LLP
    Silicon Valley Center
8   801 California Street
    Mountain View, CA  94041
9   Telephone:   (650) 988-8500
    Facsimile:    (650) 938-5200
10
    Attorneys for Plaintiff
11  ZYNGA GAME NETWORK, INC.

12
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
13
                           COUNTY OF SAN FRANCISCO
14

15
                                              Case No. CGC-09-484557
16  ZYNGA GAME NETWORK, INC., a
    Delaware corporation,                     MEMORANDUM OF POINTS AND AUTHORITIES
17                                            IN SUPPORT OF *EX PARTE* APPLICATION FOR
                    Plaintiff,                TEMPORARY RESTRAINING ORDER TO SHOW
18                                            CAUSE RE PRELIMINARY INJUNCTION
            v.
19                                            Date:      February 3, 2009
    CLZ CONCEPTS D/B/A AFTERSHOCK             Time:      11:00 a.m.
20  INNOVATIONS LLC, JEFF CHEN AND            Dept.:     301
    JAMES ZHANG,                              Judge:     Hon. Peter Busch
21
                    Defendants.               Date of Filing: February 3, 2009
22                                            Trial Date:    No date set

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

Page(s)

I.    ZYNGA AND ITS BUSINESS ................................................................................ 2

II.   ZYNGA'S ACQUISITION OF DEFENDANTS' SOCIAL NETWORKING
      GAME BUSINESS AND DEFENDANT'S RELATED NON-COMPETE
      OBLIGATIONS ..................................................................................................... 2

III.  CHEN'S AND ZHANG'S EMPLOYMENT BY ZYNGA ..................................... 4

IV.   DEFENDANTS' RELEASE OF A SOCIAL NETWORKING GAME FOR THE
      IPHONE IN VIOLATION OF THEIR NON-COMPETE OBLIGATIONS .................. 6

V.    ZYNGA IS LIKELY TO SUCCEED ON THE MERITS OF ITS CONTRACT
      CLAIM .................................................................................................................. 9

      A.   The Covenants Not To Compete Are Valid And Enforceable ........................ 10

      B.   Defendants Have Breached The Non-Compete Covenants ........................ 11

VI.   ZYNGA IS LIKELY TO SUCCEED ON THE MERITS OF ITS UNFAIR
      COMPETITION CLAIM ......................................................................................... 13

VII.  ZYNGA WILL BE IRREPARABLY HARMED UNLESS DEFENDANTS ARE
      ENJOINED FROM VIOLATING THEIR NONCOMPETE OBLIGATIONS .............. 14

VIII. THE BALANCE OF EQUITIES STRONGLY FAVORS ZYNGA .......................... 15

IX.   A BOND IS NOT NECESSARY HERE .................................................................. 16

X.    CONCLUSION ...................................................................................................... 17

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMO. OF P'S & A'S ISO APPL. FOR TRO AND OSC
RE PRELIM. INJUNCTION

# TABLE OF CONTENTS

Page(s)

## CASES

*Alliant Ins. Services, Inc. v. Gaddy,*
    159 Cal. App. 4th 1292 (2008).................................................................. 9, 10

*American Credit Indemnity Co. v. Sacks,*
    213 Cal. App. 3d 622 (1989)...................................................................... 15

*Basicomputer Corp. v. Scott,*
    973 F.2d 507 (6th Cir. 1992) ..................................................................... 14

*Cal Francisco Inv Corp. v. Vrionis,*
    14 Cal. App. 3d 318 (1971)........................................................................ 9

*Courtesy Temporary Serv., Inc. v. Camacho,*
    222 Cal. App. 3d 1278 (1990).................................................................... 14

*Fleming v. Ray-Suzuki, Inc.,*
    225 Cal. App. 3d 574 (1990)...................................................................... 10

*FPI Development, Inc. v. Nakashima,*
    231 Cal. App. 3d 367 (1991)...................................................................... 9

*Monogram Industries, Inc. v. Sar Industries, Inc.,*
    64 Cal. App. 3d 692, 698 (1996)........................................................ 9, 10, 11

*People ex rel Gallo v. Acuna,*
    14 Cal. 4th 1090 (1997) ............................................................................ 9

*Prison Health Services, Inc. v. Emre Umar and Correctional Medical Care, Inc.,*
    2002 U.S. Dist. LEXIS 12267 (E.D. Penn. May 8, 2002) ......................... 15

*Readylink Healthcare v. Cotton,*
    126 Cal. App. 4th 1006 (2005)................................................................... 14

*Sizewise Rentals, Inc. v. Mediq/PRN Life Support Services, Inc.,*
    87 F. Supp. 2d 1194 (D. Kan. 2000) .................................................... 15, 16

## STATUTES

Cal. Bus. & Prof. Code § 16601 ........................................................................ 10

Cal. Bus. & Prof. Code § 17200 ........................................................................ 14

Cal. Bus. & Prof. Code § 17203 ........................................................................ 14

Cal. Civ. Proc. Code § 526................................................................................. 15

Cal. Code of Civ. Proc. § 527(c) ........................................................................ 9

Cal. Code of Civil Proc. §529.1 ......................................................................... 16

California Business & Professions Code Section.17200 ....................................... 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## TABLE OF CONTENTS
### (continued)

Page(s)

**OTHER AUTHORITIES**

Weil & Brown, *California Practice Guide: Civil Procedure Before Trial* § 9:603,
 at 9(II)-26-27 (2008) ................................................................................................ 16

4 Witkin, California Procedure, Pleading § 476 (4th ed. 1997)...................................... 9

ii

MEMO. OF P'S & A'S ISO APPL. FOR TRO AND OSC
RE PRELIM. INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## INTRODUCTION

Zynga Game Network, Inc. ("Zynga") makes this emergency application based on defendants' brazen breach of an enforceable non-compete provision that prohibits them, for two years, from developing, distributing, or marketing social networking games that contain features or functions similar to the ones they recently sold to Zynga for over a million dollars. Despite having expressly promised Zynga they would not compete in this space during this period—a substantial inducement to Zynga's agreement to pay them such a hefty sum for these games and their associated goodwill—Defendants CLZ Concepts d/b/a Aftershock Innovations LLC, Jeff Chen and James Zhang (collectively, "Defendants") released a social networking game for the iPhone just two weeks ago. That game, called Mafia Live!, not only contains features and functions that are substantially similar to the ones Defendants represented were critical to the success of the games they sold to Zynga, but will *directly compete* with Zynga's leading game, Mafia Wars, a version of which Zynga has been developing for use on the iPhone and which it is planning to release within a matter of weeks. Defendants were aware of these plans, by virtue of Chen and Zhang having been employed by Zynga as highly paid product managers for seven months following Zynga's purchase of their social networking games. Indeed, Chen and Zhang quit Zynga just four months ago, strongly suggesting they not only knew of Zynga's plan to develop a version of Mafia Wars for the iPhone (a plan formulated while Chen and Zhang were working at Zynga), but may have started developing Mafia Live! *while still employed by Zynga*, in which case the game and all associated intellectual property rights would rightfully belong to Zynga pursuant to the confidentiality and invention assignment agreements both Chen and Zhang executed as a condition of their employment by Zynga.

Without immediate action from this Court, Zynga will be permanently and irreparably harmed. The characteristic features and functions of the social networking games Zynga purchased from Defendants are critical to the success of these and other games distributed by Zynga. Defendants' marketing and distribution of Mafia Live!, a social networking game that contains highly similar features and functions, is depriving Zynga of the value of the assets for which it paid Defendants over a million dollars, allowing Defendants to gain an unfair advantage

1    and head start in the highly competitive and rapidly evolving market for social networking games,

2    and threatening to displace market share for Zynga's upcoming release of Mafia Wars

3    permanently.  Accordingly, Zynga requests that the Court enter a temporary restraining order to

4    prevent Defendants from further marketing or distribution of Mafia Live! until the hearing can be

5    held on Zynga's motion for a preliminary injunction.

6                                **STATEMENT OF FACTS**

7    **I.    ZYNGA AND ITS BUSINESS**

8              Zynga is a social gaming company based in San Francisco, California, and the corporate

9    successor to Presidio Media, Inc.  Zynga offers a range of games such as Texas Hold 'Em poker,

10   strategy games like Sudoku and thematic text-based role playing games like "Mafia Wars," where

11   players start a mafia family and run a crime business.  Every game offered by Zynga allows a

12   player to play the game with other members of social networks.  Declaration of Andrew Trader

13   ("Trader Decl.") ¶¶ 2-3.

14            Zynga was founded in 2007 (as Presidio Media, Inc.) and launched games for social

15   networks in June 2007.  Trader Decl. ¶ 3.  Across various popular social networks, like MySpace

16   and Facebook, millions of customers participate in the online games offered by Zynga.  As of

17   January 2009, Zynga has over 75 million registered game users.  *Id.*

18   **II.   ZYNGA'S ACQUISITION OF DEFENDANTS' SOCIAL NETWORKING GAME**
           **BUSINESS AND DEFENDANT'S RELATED NON-COMPETE OBLIGATIONS**
19

20            In January 2008, Zynga (as Presidio Media, Inc.) began negotiations with another

21   San Francisco-based company called CLZ Concepts ("CLZ") and its partners Jeff Chen, James

22   Zhang and Linus Liang, for purchase of the assets and goodwill of CLZ, including several social-

23   networking applications developed by CLZ for use on social networks like Facebook and Bebo.

24   Trader Decl. ¶ 4.

25            At the time of the negotiations in late January 2008, CLZ Concepts was making and

26   distributing games for social networking platforms.  Trader Decl. ¶ 5.  Zynga sought to purchase

27   CLZ in order to further solidify its position in the market for social networking games.  *Id.*  CLZ

28   had developed social networking applications that had gained substantial popularity on social

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1 networking websites. *Id.* These applications possessed distinctive features and functionality that,

2 from Zynga's perspective, made CLZ an attractive target for acquisition. *Id.*

3        CLZ described the essential features of its social networking applications in a PowerPoint

4 presentation it provided to Zynga during the parties' negotiations. Trader Decl. ¶ 5 & Ex. A.  In

5 it, CLZ touted certain key features of its applications, including a "ranking" function, a "send"

6 function and a "meet" function. *Id.*; Declaration of Kyle McEachern ("McEachern Decl."), ¶ 6 &

7 Ex. A.

8        On February 4, 2008, Zynga (as Presidio Media, Inc.), CLZ Concepts, and Chen, Zhang

9 and Liang, as individual sellers, signed the Asset Purchase Agreement (the "APA") for the

10 purchase of CLZ's assets and goodwill for over $1 million and issuance of stock to Chen, Zhang

11 and Liang.  Trader Decl. ¶ 7 & Ex. B.[1]  The APA specifies the software applications acquired

12 from CLZ as "Purchased Applications." *Id.* at Ex. B (Schedule 1.1.1.1).  The list of Purchased

13 Applications included all but two of CLZ's software applications, one of which raised intellectual

14 property concerns and both of which were phased out of production. *Id.* at ¶ 8.  The APA further

15 provided for Zynga's purchase of, among other things, all intellectual property rights to the sold

16 assets, all software and source code to the sold assets, all goodwill associated with the sold assets

17 and all trade secrets used in connection with the sold assets. *Id.* at Ex. A, at 1-2.

18        To insure that Zynga would realize the full benefit of its purchase, Zynga bargained for a

19 provision limiting CLZ and the individual sellers from engaging in a "Competing Business" with

20 Zynga for two years following the Agreement's closing date of February 4, 2009.  Section 4.2.1

21 of the APA defines a "Competing Business" to mean:

22             (i) for purposes of the first year immediately following the Closing
               Date, any business consisting of any of the following: (A) the
23             development, marketing or distribution of applications for the
               Facebook platform <u>or other social-networking platforms</u> or (B) the
24             development, marketing or distribution of software applications <u>that</u>
               <u>have functions and/or features similar to those of the Purchased</u>
25             <u>Applications;</u> and (ii) for purposes of the second year immediately
               following the Closing Date, the development, marketing or
26             distribution of applications for the Facebook platform <u>or other</u>

---

27 [1] Zynga intended to purchase all assets of CLZ and incur most known liabilities.  Zynga, however, was unwilling to
28 absorb unknown CLZ liabilities, which led to the structure of the transaction as an Asset Purchase Agreement.
   Trader Decl. ¶ 8.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    social-networking platforms that have functions and/or features
     substantially similar to those developed, marketed or distributed by
2    the Purchaser or otherwise available on the Purchaser's network.

3   Trader Decl., Ex. B at 18-19 (emphasis added).[2]

4        Zynga insisted on such a provision to eliminate any concern that CLZ and the individual

5   sellers would immediately reorganize and compete against Zynga in the very business they sold

6   to Zynga, namely, developing games for social networking platforms.  Trader Decl. ¶10.

7        Moreover, the characteristics of the software applications CLZ sold to Zynga were

8   distinctly successful in the social networking marketplace prior to their purchase.  *Id.*  Zynga

9   would not have been able to fully exploit the intrinsic value of these characteristics of CLZ

10  applications if, after sale, CLZ or the individual sellers could immediately compete in the

11  marketplace with similarly featured games.  *Id.*  Thus, Zynga sought to safeguard its investment

12  in the applications formerly owned by CLZ through the non-competition provision curtailing

13  CLZ's ability to immediately make and sell similarly featured games for a limited time.  *Id.*

14  **III.    CHEN'S AND ZHANG'S EMPLOYMENT BY ZYNGA**

15       In connection with the APA, both Chen and Zhang were offered positions with Zynga as

16  Product Managers.  Trader Decl. ¶ 11 & Exs. C-D.[3]  Each was provided with and signed a written

17  employment agreement that contained a provision, Section 7(a)(i), indicating that for two years

18  they would not directly or indirectly:

19            participate or engage in the design, development, manufacture,
              production, marketing, sale or servicing of any product of, or
20            otherwise engage in the provision of any services to, any person or
              entity that engages in a business that is Directly Competitive (as
21            defined below) in any Restricted Territory (as defined below) . . . .

22  Trader Decl. Ex. C at 11, Ex. D at 11.

23       Section 7(b)(ii) of the employment agreements define "Directly Competitive" to mean:

24            (A) for purposes of the first year of the Restrictive Period, (1)
              developing, marketing or distributing software applications that
25            have functions and/or features similar to those of the Purchased

26  _____

27  [2] Hereinafer, the term Year One refer to the first year following the Closing Date (which was February 4, 2008).
    Year Two refer to the second year following the Closing Date.
28  [3] CLZ's third founder and only other employee, Linus Liang (who is not a defendant) was also offered and accepted a
    position with Zynga.  Trader Decl. ¶ 18.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

> <u>Applications</u> or (2) developing, marketing or distributing
> applications for the Facebook platform <u>or other social-networking
> platforms</u>; and (B) for purposes of the second year of the Restrictive
> Period, developing, marketing or distributing applications for the
> Facebook platform <u>or other social-networking platforms that have
> functions and/or features substantially similar to those developed,
> marketed or distributed by the Company</u> or otherwise available on
> the Company's network.

Trader Decl. Ex. C at 11; Ex. D at 11 (emphasis added).).

Finally, in connection with their employment by Zynga, Chen and Zhang each also executed Employee Invention Assignment and Confidentiality Agreements (exhibit A to their respective employment agreements) that obligated them to disclose all inventions made by them prior to their employment by Zynga, and acknowledging that all inventions made in the scope of their employment or that relate to Zynga's business would be owned by Zynga. Trader Decl. Ex. C at Ex A, ¶ 3; Ex. D at Ex A, ¶ 3.

Chen and Zhang began working for Zynga on February 6, 2008. A significant portion of their time was spent working on the applications CLZ sold to Zynga. They also spent a substantial amount of time planning new Zynga software applications. Trader Decl., ¶ 19.

The former CLZ employees called themselves "CLZ Studios" within Zynga and operated like a separate unit of the company. However, they were regular attendees at Zynga's daily and weekly strategy meetings where sensitive, non-public product and strategic information was shared. Trader Decl. ¶ 20. During the course of their employment by Zynga, Chen and Zhang received internal information about Zynga product trends, and important gaming features according to Zynga's internal research. Declaration of Scott Dale ("Dale Decl."), ¶ 4. Chen and Zhang were also present for strategy meetings where Zynga discussed internal product plans, including its plans to launch its Mafia Wars game on the iPhone. *Id.*; *see also* Trader Decl. ¶ 25.

On September 2, 2008, approximately seven months after they were hired, Chen and Zhang left Zynga.[4] Trader Decl. ¶ 21. Six days later, on September 8, 2008, Chen formed a company called CLZ Concepts, LLC and registered it with the California Secretary of State. *Id.*

---

[4] In conjunction with their departure, Chen and Zhang both signed separation agreements with Zynga reaffirming their non-competition obligations. Trader Decl. Ex. E at § 3(i); Ex. F at § 3(i).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    at ¶ 22.

2       In November 2008, Zynga released "Live Poker," a mobile version of its popular Texas

3   Hold 'Em game for the iPhone.  Trader Decl. ¶ 25.  In addition, consistent with the confidential

4   and strategic plans it had revealed to Chen and Zhang, Zynga has been developing a version of

5   Mafia Wars for the iPhone.  That game is scheduled for release in the next few weeks.  *Id.*

6   **IV.  DEFENDANTS' RELEASE OF A SOCIAL NETWORKING GAME FOR THE**

          **iPHONE IN VIOLATION OF THEIR NON-COMPETE OBLIGATIONS**

7

8       On or about January 20, 2009, Zynga discovered that Chen and Zhang, through their new

9   venture CLZ Concepts (doing business as Aftershock Innovations LLC), released a social

10   networking game for the iPhone called Mafia Live! on or around January 19, 2009.  Trader Decl.

11   ¶¶ 23-24; McEachern Decl. ¶ 7.

12       Although the appearance and plot of Mafia Live! is different from the games Zynga

13   purchased from Defendants, Mafia Live! contains *features* and *functions* that are similar—indeed,

14   highly similar—to these games, in direct violation of Defendants' non-compete obligations.

15       As demonstrated in Paragraphs 11-19 of the accompanying McEachern Declaration, these

16   similar features and functions include the following:

17     •   **Leaderboard Feature:**  Both You're a Hottie and Mafia Live! have a feature that shows
        leading participants in each game.  In the You're a Hottie Purchased Application, there is

18        a leaderboard of hotties that have accrued the most value, or "Top Hotties," and hottie
        owners with the most net worth in cash and hotties, called "Top Owners."  Mafia Live!

19        also has a leaderboard function that is unlocked after several levels of play called "My
        Snitch" which list the families with the most members, most fights won, most jobs done

20        and those with the most experience.

21     •   **Recruit Function:**  Both You're a Hottie and Mafia Live! have a feature that allows
        recruiting of other players to the game.  In the You're a Hottie application, the application

22        lists contacts, or "friends," to whom the player can send invitations to request that they
        join and participate.  In Mafia Live!, the "Recruit" function allows users to send

23        invitations to join the game via email address manually entered or obtained from the
        Contacts list of a user's iPhone.  Additionally, both games give incentives for the

24        recruitment of additional participants.  You're a Hottie provides a virtual cash bonus for
        every one of your friends participating in the game.  Mafia Live! provides a "loyalty"

25        points incentive that can be used to replenish health, energy or stamina statistics of the
        player.

26

27     •   **Purchase of Property Feature:**  Both You're a Hottie and Mafia Live! have a feature that
        allows the purchase of property.  In the You're a Hottie application, the game allows for

28        the purchase of real property in the form of mansions and residences to store a player's
        hotties.  Storage of hotties in a purchased property allows the hottie to accrue additional

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

value. Mafia Live! likewise allows a player to purchase real property in the form of yards, lots and various businesses. A player accrues additional cash at certain intervals as the holder of real property.

- **Upkeep Payment Feature:** Both games have an "upkeep" payment feature, which requires users to pay an upkeep fee while they own certain property. In the You're a Hottie application, the game requires a player to pay an upkeep at certain time interval for purchased real property. In Mafia Live!, the users are required to pay an upkeep fee at particular time intervals for certain equipment, such as purchased guns, cars and bulletproof vests.

- **Sale of Real Estate Feature:** Both the You're a Hottie game and Mafia Live! allow a player to sell back purchased real estate, but at only 50 percent of the price originally paid for the property.

- **"News Feed" Function:** Both the You're a Hottie game and Mafia Live! have a news feed function. In You're a Hottie, the "Hottie Feed" displays recent actions a player has taken in the game, such as the purchase of hotties, upkeep fees paid and property purchased, in reverse chronological order according to event. In the "My Hood" area of Mafia Live! the "Recent Fights" feed list a player's most recent fights, including the attacker and result, in reverse chronological order. A true and correct copy of a screenshot displaying the "Hottie Feed" in You're a Hottie is included as the first screenshot in Exhibit C.

- **Inventory Feature:** Both applications show the items owned by a player. In You're a Hottie, the "Your Profile" section lists the hotties and property a player owns. The "My Street Cred" section of Mafia Live! lists the equipment and real estate owned by a player.

- **Cash Statistic Feature:** You're a Hottie and Mafia Live! both have a cash statistic feature, which tracks the current amount of cash available to a player. The players cash statistic is visible in most screens of both games and can be seen in the "Your Profile" section of You're a Hottie a few lines under the user's name. In Mafia Live!, the statistic is visible in the upper left hand corner of the screen in the "My Street Cred" area.

- **Interaction with Non-Players Function:** The Birthday Wall application[5] has a feature that lists individuals within the social network having a birthday that day, and gives the player the ability to click on their picture or profile and interact with them by leaving them a message. In Mafia Live!, the fight function lists individuals playing the game by profile name, and gives you the ability to click on a "Fight" button next to their profile name and interact with them in the form of a virtual fight where the winner gains experience and often "cash." For both games, the respective functions allow a user to interact with strangers within the network that a player would not otherwise meet.

Indeed, Mafia Live! also contains all three critical functions CLZ identified in its description of the critical functions of the applications sold to Zynga in the APA. *Id.* at ¶ 9.

---

[5] The Purchased Applications included an application called "Birthday Meaning." The Birthday Meaning application originally allowed users to submit day and month of their birth for a comment on what their birthday means and a comment on their personal strengths and weaknesses. Chen and Zhang, along with another former CLZ partner Linus Liang, continued working on the Birthday Meaning application as Zynga employees. They added a feature called Birthday Wall where the program displays a list of Facebook users celebrating a birthday that day, and allows a user to send a birthday message to one of the individuals on the Birthday Wall. McEachern Decl., ¶ 5.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Specifically, the program *ranks* players' mafia families in an area of the game called "My Snitch"

2   according to those families with the most members, most fights won, most jobs done and those

3   with the most experience. *Id.* The game's "Recruit" function allows users to *send* invitations to

4   join the game via email address manually entered or obtained from the Contacts list of a user's

5   iPhone. *Id.* The game further allows players to *meet* other players within the social network

6   through the Recruit function or by listing random players' mafia families in the "Fight" area of

7   the game and allow a user to pick any listed family to fight. *Id.*

8          Moreover, Mafia Live!'s features and functions are highly similar to Zynga's Mafia Wars.

9   In Mafia Live!, the player is an aspiring criminal and mafia member that seeks to acquire wealth

10  in the form of virtual "cash," as well as virtual property and increased experience as a mafia

11  member. McEachern Decl. ¶ 8. The central objectives of the game are to acquire and increase

12  holdings in the form of virtual "cash," equipment such as guns, cars and defensive apparel and

13  real estate holdings. *Id.* Another objective is to increase the player's experience points as a mafia

14  member by either performing "jobs" consisting of a number of criminal activities such as "Auto

15  Theft," or virtually fighting and prevailing over another player's mob family, which also earns

16  cash. *Id.* Another primary objective of the game is to grow the player's mafia family by

17  communicating with friends within the social network and strangers within the social network

18  that a player would not otherwise meet, and convincing them to join a crime family. *Id.* These

19  game characteristics are *nearly identical* to Zynga's Mafia Wars game which is popular on social

20  networking websites like Facebook. *Id.*

21         On January 30, 2009, Zynga filed this action and notified Defendants that it considered

22  them to be in breach of their contractual obligations and that if the matter was not resolved by the

23  morning of Monday, February 2, Zynga intended to seek a temporary restraining order.

24  Declaration of Jedediah Wakefield ("Wakefield Decl."), ¶ 2 & Ex. 1. Because the matter had not

25  been resolved by then, on the morning of February 2, 2009, Zynga notified Defendants of their

26  intention to seek a TRO in this department the next day. *Id.* at ¶ 3 & Ex. 2.

27                                          **ARGUMENT**

28         Preliminary injunctive relief is particularly appropriate in cases involving breach of a

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

covenant not to compete given by a seller in connection with the sale of a business and its associated goodwill. *Alliant Ins. Services, Inc. v. Gaddy*, 159 Cal. App. 4th 1292, 1299 (2008) (affirming preliminary injunction enjoining seller from competing with buyer in violation of non-competition covenant given in connection with sale of business); *Monogram Industries, Inc. v. Sar Industries, Inc.*, 64 Cal. App. 3d 692, 698 (1996) (same). Here, where both the evidence of Defendants' breach and the imminent and irreparable harm Zynga will suffer as a result are clear, preliminary injunctive relief is not only appropriate, it is absolutely critical.

Trial courts generally consider two factors in determining whether to grant preliminary injunctive relief: (1) the likelihood that the plaintiff will ultimately prevail on the merits, and (2) the interim harm that the plaintiff is likely to suffer if injunctive relief is denied, compared to the interim harm that the Defendant is likely to suffer if injunctive relief is granted. *Alliant*, 159 Cal. App. 4th at 1299; *People ex rel Gallo v. Acuna*, 14 Cal. 4th 1090, 1109 (1997). A party requesting an ex parte temporary restraining order ("TRO") must also show that (1) it is likely to suffer great or irreparable injury before a hearing on a noticed motion can be held and (2) there has been reasonable notice to the opposing party or its attorneys. Cal. Code of Civ. Proc. § 527(c). Based on these factors, Zynga is entitled to both a preliminary injunction and an ex parte temporary restraining order pending the hearing on that injunction.

## V.   ZYNGA IS LIKELY TO SUCCEED ON THE MERITS OF ITS CONTRACT CLAIM

Zynga is substantially likely to succeed on the merits of its claim for breach of contract against Defendants. To prevail on such claim, Zynga must show the existence of a valid contract, breach of the contract, and damage. *See* 4 Witkin, California Procedure, Pleading § 476 (4th ed. 1997) Pleading § 476; *Cal Francisco Inv Corp. v. Vrionis*, 14 Cal. App. 3d 318, 321 (1971); *FPI Development, Inc. v. Nakashima*, 231 Cal. App. 3d 367, 383 (1991). Zynga will easily do so, as the evidence presented with this application clearly demonstrates that (1) CLZ, Chen and Zhang each entered into contracts with Zynga's predecessor containing fully enforceable non-compete covenants; (2) CLZ, Chen and Ziang are violating these covenants by developing, distributing and marketing Mafia Live! less than one year after they sold social networking games with

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   substantially similar features and functions to Zynga; and (3) Zynga will suffer irreparable

2   damage to its business and associated goodwill as a result of Defendants' unlawful conduct.

3   **A.    The Covenants Not To Compete Are Valid And Enforceable**

4           While covenants not to compete generally are not enforceable in California, there is a

5   longstanding and well-established exception for such covenants when granted by a seller in

6   connection with the sale of his or her business and its associated goodwill.  Section 16601 of the

7   California Business and Professions Code sets forth the specific circumstances under which such

8   covenants will be enforced, including, as relevant here, the sale by any owner of a business entity

9   of "all or substantially all of the operating assets of a division or a subsidiary of the business

10  entity together with the goodwill of that division or subsidiary." Cal. Bus. & Prof. Code § 16601.

11  *See also Mongram Industries*, 64 Cal. App. 3d at 698 (discussing Section 16601 and noting that

12  covenants not to compete arising out of the sale of a business "are more liberally enforced than

13  those arising out of the employer-employee relationship").  As the language of Section 16601

14  implies, not all assets of the business entity or any particular division thereof need be sold; the

15  sale of "substantially all" of such assets is enough.  *Fleming v. Ray-Suzuki, Inc.*, 225 Cal. App. 3d

16  574, 583 (1990) (rejecting argument that section 16601 was inapplicable because seller retained

17  certain assets relating to the portion of his business that he sold, on the basis that such assets

18  either were either not related to what was sold or were not "substantial").

19          The rationale for enforcing such non-compete covenants is clear:  to prevent a seller from

20  depriving a buyer of the full value of his or her investment in the assets acquired.  *E.g., Alliant*,

21  159 Cal. App. 4th at 1301 (purpose of Section 16601 is "to prevent the seller from depriving the

22  buyer of the full value of its acquisition, including the sold company's goodwill"); *Monogram*, 64

23  Cal. App. 3d at 698 (the "thrust of Business and Professions Code section 16601 is to permit the

24  purchaser of a business to protect himself or itself against competition from the seller which

25  competition would have the effect of reducing the value of the property right that was acquired").

26  Obviously, if a seller were permitted to compete head-to-head with the buyer after expressly

27  promising—*and being paid*—not to do so, the value of the buyer's investment would be

28  substantially diminished, if not altogether destroyed.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Here, there can be no dispute that the non-compete covenants agreed to by CLZ, Chen and

2    Zhang are fully enforceable.[6]  As shown above, each of these covenants was given by the

3    respective defendant in connection with the sale of substantially all (if not all) of his or its assets

4    relating to the software applications identified in the Asset Purchase Agreement, including but not

5    limited to the applications themselves, all related intellectual property rights (including all trade

6    secrets and confidential information), all related contracts, all related documentation and records

7    (financial, marketing, etc.), and, most significantly for present purposes, "all goodwill" associated

8    with such assets.  Trader Decl. Ex. B at ¶¶1.1.1 – 1.1.6.

9         Furthermore, the covenants are limited in scope, merely preventing Defendants from

10   developing, distributing or marketing social networking games that would decrease the value of

11   the assets Zynga purchased from Defendants, and even then, only for two years.  This limited

12   restriction is reasonably necessary to protect Zynga's substantial investment in the games and

13   associated assets and goodwill it purchased from Defendants.   Accordingly, the covenants easily

14   satisfy the requirements of Section 16601, and should be enforced, immediately, to ensure Zynga

15   is not deprived of the benefit of its bargain.  *See Monogram Industries*, 64 Cal. App. 3d at 698.

16   **B.    Defendants Have Breached The Non-Compete Covenants**

17        Defendants' development, marketing and distribution of Mafia Live! has, without

18   question, breached their non-compete obligations to Zynga.  Indeed, Defendants have breached

19   their obligations in numerous respects.

20        As explained above, Defendants' non-compete covenants bar them, during Year One,

21   from developing, marketing, or distributing applications (1) "for the Facebook platform *or other*

22   *social networking platforms*"; **OR** (2) "that have *functions and/or features similar* to those of [the

23   games Zynga purchased from Defendants]."  Trader Decl., Ex. B at ¶ 4.2.1 (emphasis added).

24   During Year Two, Defendants are barred from developing, marketing, or distributing applications

25   "for the Facebook platform or other social networking platforms that have functions and/or

26   features substantially similar to those developed, marketed or distributed by [Zynga or otherwise

---

[6] As successor in interest to Presidio Media, Inc., Zynga is entitled to enforce the covenants against Defendants. *See* Trader Decl. Ex. A ¶ 4.2.4 ("Any person to whom all or part of the Purchased Assets is sold if this Agreement is assigned, shall be entitled to enforce each of the covenants contained in this Section 4.2").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   available on its network]. . ." *Id.*; *see also* Ex. C at § 7(b)(ii); Ex. D at § 7(b)(ii). Thus, while the

2   restriction during Year Two is somewhat narrower in the sense that an application must be both

3   for a social networking platform *and* have substantially similar features or functions, it is broader

4   in the sense that the similarities to which it speaks relate to features or functions of *any* social

5   networking game developed, marketed or distributed by Zynga, not just the social networking

6   games Zynga purchased from Defendants.

7        As shown by the accompanying evidence, Defendants are engaging in ongoing violations

8   of their Year One obligations and are about to be in violation of their Year Two obligations—an

9   imminent breach the Court can and should prevent before the associated harm can occur.

10       As to Year One, Defendants began breaching their non-compete obligations from the

11  moment they began developing Mafia Live! (time frame currently unknown to Zynga, but clearly

12  months before the product was released) because that game is both an application for a "social

13  networking platform" *and* contains features and/or functions that are highly similar to the games

14  Zynga purchased from Defendants.

15       *First*, as explained in the accompanying declaration of Scott Dale, the iPhone can be and

16  often is used as a social networking platform; indeed, it provides the ideal infrastructure for the

17  distribution and play of social networking games, allowing users to download the games and then

18  contact and interact with each other during gameplay—the very essence of a social networking

19  game. Any contention by Defendants that the term "social networking platform" is necessarily

20  limited to web-based platforms like Facebook or MySpace finds no support; indeed, had the

21  parties intended the term to be so limited, they could and would have used the term social

22  networking "websites" or "services." Instead, they opted to use the term "platform," a much

23  broader term used to describe *any* hardware architecture, structure or framework on which

24  applications (like social networking games) can be run. Dale Decl., ¶¶ 5-7.

25       *Second*, as demonstrated in the accompanying declaration of Kyle McEachern, Mafia

26  Live! has numerous features and functions that are similar (in fact, highly similar) to those

27  present in the social networking games Defendants sold to Zynga.[7] McEachern Decl. ¶¶ 11-19.

28  ───────────
    [7] Zynga does not contend (at least not at this time) that Mafia Live! shares the same expression, imagery or

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Given the substantial similarities between these features and functions, *including as to features*

2    *and functions that Defendants represented were critical components of the games they sold*

3    *Defendants* (see Trader Decl. ¶6 & Ex. A) they cannot now credibly contend that their

4    development, distribution, and marketing and Mafia Live! does not run afoul of their contractual

5    obligations.

6         As to their Year Two obligations, Defendants will be in breach thereof the moment Year

7    Two begins, unless they are enjoined.  As shown above, Mafia Live! is both an application for

8    social networking platforms *and* contains features or functions that are substantially similar to

9    Zynga's Mafia Wars and upcoming release of Mafia Wars for the iPhone.  McEachern Decl. ¶¶ 8-

10   9.  Thus, both criteria for violating Defendants' Year Two obligations will be met.

11        Significantly, although Defendants' Year One obligations end shortly, an injunction is still

12   needed—even in the absence of any violation of Defendants' Year Two obligations—to prevent

13   the further, compounding harm Zynga will suffer from the headstart to market Defendants

14   unfairly gained as a result of their breach of their Year One obligations.  Plainly, Defendants

15   began developing Mafia Live! well before the end of Year One; indeed, as explained in the

16   accompanying declaration of Scott Dale, development likely started many months ago (possibly

17   even when Defendants were still employed by Zynga).  Dale Decl. ¶ 3.  Thus, even if a violation

18   of the Year Two obligations never occurs, an injunction is still needed to prevent the harm that

19   began in Year One from continuing to flow into Year Two.

20   **VI.   ZYNGA IS LIKELY TO SUCCEED ON THE MERITS OF ITS UNFAIR
          COMPETITION CLAIM**

21

22        There is also little doubt Zynga will prevail on the merits of its claim for violation of

23   California Business & Professions Code Section 17200, which provides a separate and

24   independent basis for injunctive relief.  Section 17200 provides a cause of action for parties

25   injured by any "unlawful, unfair and fraudulent business act or practice" to seek injunctive relief.

26   *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007).

27        Here, Defendants' development, distribution and marketing of Mafia Live! in direct

---

28   proprietary code as any of the games Zynga purchased from Defendants, such as might give rise to a claim for
     copyright infringement or trade secret misappropriation.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   violation of their non-compete obligations would be an unfair and unlawful practice in violation

2   of Cal. Bus. & Prof. Code § 17200.  Moreover, to the extent Defendants began developing Mafia

3   Live! while still employed by Zynga and/or based on Zynga's confidential information or

4   business strategies, which it may well have been, their conduct would violate Section 17200

5   irrespective of whether the information taken from Zynga constitutes a "trade secret" under

6   California's Uniform Trade Secrets Act.  *See Courtesy Temporary Serv., Inc. v. Camacho*, 222

7   Cal. App. 3d 1278,1291 (1990) (even if the confidential information taken from former employer

8   was not a trade secret, its use violates Section 17200); *Readylink Healthcare v. Cotton*, 126 Cal.

9   App. 4th 1006, 1020-21 (2005) (improper use of confidential information taken from former

10  employer properly enjoined as a violation of Section 17200).  Accordingly, Zynga is also entitled

11  to injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203.

**VII.   ZYNGA WILL BE IRREPARABLY HARMED UNLESS DEFENDANTS ARE
        ENJOINED FROM VIOLATING THEIR NONCOMPETE OBLIGATIONS**

13      Absent a TRO, Zynga will suffer immediate and irreparable harm.  Defendants have

14  developed, marketed and distributed a social networking game during Year One (and will

15  continue to do so during Year Two unless enjoined) that contains the same core features and

16  functions they represented were critical to the success of the games they sold to Zynga.  The

17  presence of Mafia Live! on the market, approximately six weeks ahead of Zynga's scheduled

18  release of a directly competitive game, is likely to cause serious, incalculable and irreparable

19  harm to Zynga, by, among other things, displacing demand for Zynga's product, saturating the

20  market for Mafia-themed games for the iPhone, and damaging the goodwill associated with Mafia

21  Wars and the myriad other social networking games Zynga purchased from Defendants.  Trader

22  Decl. ¶¶ 28-29.  This harm is compounding every day, as Defendants are gaining market share

23  and will be more and more difficult to displace.  *Id.*

24      In this situation, courts have no trouble concluding that monetary damages will be

25  incalculable and inadequate to make Zynga whole.  *See Basicomputer Corp. v. Scott*, 973 F.2d

26  507, 511-12 (6th Cir. 1992) (competitive losses and harm to goodwill resulting from breach of

27  non-compete covenant given in connection with sale of a business constitute irreparable and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    incalculable injury justifying preliminary injunctive relief); *Prison Health Services, Inc. v. Emre*

2    *Umar and Correctional Medical Care, Inc.*, 2002 U.S. Dist. LEXIS 12267, *24-25 (E.D. Penn.

3    May 8, 2002) (harm resulting from breach of non-compete covenant given in connection with sale

4    of business is irreparable, resulting not from the initial breach alone, but from "the threat of the

5    unbridled continuation of the violation and the resultant incalculable damage to the former

6    employer's business"); *Sizewise Rentals, Inc. v. Mediq/PRN Life Support Services, Inc.*, 87 F.

7    Supp. 2d 1194, 1200 (D. Kan. 2000) (recognizing that damage to goodwill is irreparable).

8    Indeed, given the compounding nature of the harm that Zynga is suffering, a TRO enjoining

9    Defendants from further distribution of Mafia Live pending the hearing on Zynga's motion for

10   preliminary injunction is needed to preserve the status quo.

11           Furthermore, the parties specifically discussed and agreed that Defendants' non-

12   competition obligations were so important to Zynga, and to the value of the goodwill associated

13   with the games Zynga purchased from Defendants, that a breach of those obligations would cause

14   "immediate and irreparable damage" to Zynga.  Trader Decl. Ex. C at § 7(e); Ex D at § 7(e); *see*

15   *also* Trader Decl. Ex. B at ¶ 4.2.4 (Asset Purchase Agreement) (reflecting CLZ's agreement that a

16   violation of the non-compete obligation would entitle Zynga to seek "a temporary, preliminary

17   and permanent injunction enjoining or restraining CLZ from any violation or threatened violation

18   of the restrictive covenants contained herein, *without the necessity of proving actual damages* or

19   posting a bond or other undertaking") (emphasis added).

20           Under these circumstances, injunctive relief is entirely appropriate.  Cal. Civ. Proc. Code

21   § 526; *see also American Credit Indemnity Co. v. Sacks*, 213 Cal. App. 3d 622, 637 (1989)

22   (injunctive relief required where monetary damages inadequate to remedy wrongful conduct).

23   **VIII.   THE BALANCE OF EQUITIES STRONGLY FAVORS ZYNGA**

24           The balance of equities likewise mandates that a temporary restraining order issue.  If

25   granted, the requested restraining order would work little or no hardship on Defendants, who

26   merely would be enjoined from acts that fall squarely within the restrictions imposed by the non-

27   compete covenants to which they knowingly and freely agreed, and for which they have been

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   handsomely paid.[8]  This is bargained-for legal detriment for which Defendants have no right to

2   complain.  *See Sizewise Rentals*, 87 F. Supp. 2d at 1200.  Moreover, Mafia Live! is only one of at

3   least five other games for the iPhone that Defendants are marketing and distributing (none of

4   which appear to be social networking games).  Trader Decl. ¶ 30 & Ex. F.  Zynga is not asking

5   the Court to enjoin Defendants from marketing or distributing these games.  Defendants can thus

6   continue to realize revenue and gain market share for all of the other games they already have on

7   the market, and any additional ones they release that are not in breach of their obligations to

8   Zynga.

9          On the other hand, the harm to Zynga should no TRO issue would be incalculable.  In the

10   absence of the restraining order, Defendants will continue to gain market share in the highly

11   competitive space for Mafia-themed games for the iPhone, potentially saturating the market and

12   supplanting demand for Zynga's upcoming release of Mafia Wars.  Indeed, Zynga may be unable

13   to sell Mafia Wars for the iPhone to persons who have already purchased Mafia Live!  Trader

14   Decl., ¶¶ 28-29.  On these facts, a restraining order is plainly critical.

15   **IX.   A BOND IS NOT NECESSARY HERE**

16          The Court is not required to order Zynga to post a bond if the TRO is granted.  Weil &

17   Brown, *California Practice Guide:  Civil Procedure Before Trial* § 9:603, at 9(II)-26-27 (2008).

18   Nor is one appropriate here.  As noted, above, the parties expressly understood and agreed that

19   the non-compete covenants were such a critical part of their deal that their violation would entitle

20   Zynga to a TRO (and preliminary injunction) "without the necessity of proving actual damages or

21   *posting a bond or other undertaking*."  Trader Decl. Ex. B at ¶ 4.2.4 (emphasis added).

22   Particularly in light of the fact that the damages Defendants might suffer if a TRO issues are

23   dwarfed by the irreparable harm Zynga is *certain to* suffer if it does not, the Court should uphold

24   this aspect of the parties' agreement and not require Zynga to post a bond pursuant to Cal. Code

25   of Civil Proc. §529.1.

26

---

27   [8] Drafts of the APA and Chen's and Zhang's employment agreements were sent to counsel for CLZ and the
     individual sellers prior to execution of the contracts.  Counsel for CLZ and the individual sellers participated in
28   negotiating the scope, duration and subject matter of the limited covenants not to prior to execution of the contracts.
     Trader Decl. ¶15.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    X.    **CONCLUSION**

2           For the foregoing reasons, Zynga respectfully requests that the Court (1) enter a

3    Temporary Restraining Order against Defendants CLZ Concepts d/b/a Aftershock Innovations

4    LLC, Jeff Chen and James Zhang in the proposed form submitted herewith; and (2) issue an order

5    to show cause why a preliminary injunction should not be granted.

6    Dated:  February 3, 2009                              FENWICK & WEST LLP

7

8                                                          By: _____
                                                               Jedediah Wakefield

9                                                          Attorneys for Plaintiff
                                                           ZYNGA GAME NETWORK, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT F

1   JEDEDIAH WAKEFIELD (CSB No. 178058)
    jwakefield@fenwick.com
2   JENNIFER L. KELLY (CSB NO. 193416)
    jkelly@fenwick.com
3   FENWICK & WEST LLP
    555 California Street, 12th Floor
4   San Francisco, CA 94104
    Telephone:   (415) 875-2300
5   Facsimile:   (415) 281-1350

6   HENRY Z. CARBAJAL III (CSB No. 237951)
    hcarbajal@fenwick.com
7   FENWICK & WEST LLP
    Silicon Valley Center
8   801 California Street
    Mountain View, CA 94041
9   Telephone:   (650) 988-8500
    Facsimile:   (650) 938-5200

10

11  Attorneys for Plaintiff
    ZYNGA GAME NETWORK, INC.

12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                        COUNTY OF SAN FRANCISCO

15

16  ZYNGA GAME NETWORK, INC., a          Case No. CGC-09-484557
    Delaware corporation,
17                                        DECLARATION OF SCOTT DALE IN SUPPORT OF
                    Plaintiff,            EX PARTE APPLICATION FOR TEMPORARY
18                                        RESTRAINING ORDER TO SHOW CAUSE RE
          v.                              PRELIMINARY INJUNCTION
19
    CLZ CONCEPTS D/B/A AFTERSHOCK         Date:    February 3, 2009
20  INNOVATIONS LLC, JEFF CHEN AND        Time:    11:00 a.m.
    JAMES ZHANG,                          Dept.:   301
21                                        Judge:   Hon. Peter Busch
                    Defendants.
22                                        Date of Filing:   February 3, 2009
                                          Trial Date:       No date set
23

24       I, Scott Dale, declare as follows:

25       1.      I am Vice President of Engineering and have been employed at Zynga Game

26  Network, Inc. for approximately 15 months.  I graduated from Stanford University in 1991 with a

27  Bachelor's degree in Computer Science and have many years of experience in software

28  development.  I make this declaration of my own personal knowledge, except to any extent

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   otherwise specified. If called as a witness, I could and would testify competently to the facts set

2   forth herein.

3   **Development Time for Social Networking Applications**

4        2.       Zynga is a software company that creates and markets games and other

5   applications for social networking platforms. As Vice President of Engineering at Zynga, I am

6   familiar with the development cycle for social networking games, including those made for the

7   iPhone. I have played and analyzed the Apple iPhone-based game "Mafia Live!," which I

8   understand was created by and is being distributed by former Zynga employees Jeff Chen and

9   James Zhang in a new company they have formed, called Aftershock. Jeff Chen and James

10  Zhang worked at Zynga until September 2, 2008. According to the Aftershock website, they

11  released the Mafia Live! game on January 19, 2009.

12       3.       Based on my experience, I would estimate that development on the Mafia Live!

13  game began months before it was released last month. Porting an *existing* social networking

14  game—one where code has already been written—to the iPhone would take approximately eight

15  weeks. This assumes the use of four full-time software developers in porting the game, or 32

16  developer weeks. Thus, the development cycle would be substantially longer with the

17  involvement of only two software developers, and in my experience could double the game

18  creation cycle to 16 weeks. Also, development generally takes substantially longer if there is no

19  shared code to re-use. The level of game complexity can also lengthen development time.

20  Games with sophisticated game mechanics and those that leverage social networks and contacts

21  during game play, like Mafia Live!, typically take longer to create than games with simpler

22  functions.

23       4.       I worked at Zynga while it employed Jeff Chen, James Zhang and Linus Liang, the

24  former partners of CLZ Concepts. I recall that Mr. Chen and Mr. Zhang received internal

25  information about Zynga product trends, and important gaming features according to Zynga's

26  internal research and user preferences. Mr. Chen and Mr. Zhang were also present for strategy

27  meetings where we discussed internal product plans, including our plans to launch our Mafia

28  Wars game on the iPhone.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**The iPhone and Social Networking**

5.     Zynga has long-planned to utilize the iPhone for distribution of its social networking games, because of its inherent capabilities for use as a social networking platform. For example, in November 2008, Zynga announced the release of a mobile version of its popular Texas Hold 'Em game called "Live Poker." An iPhone version of Zynga's popular "Mafia Wars" game is planned for release at the end of this month.

6.     Although the iPhone can do far more than social networking (e.g., it can be used as a phone, camera, or music player), it is also a social networking platform—that is, an architecture, structure or framework that supports social networking applications. While many popular social networking platforms incorporate the use of websites (like www.facebook.com), social networking *sites* and social networking *platforms* are not coextensive. From an application development standpoint, the iPhone possesses the primary characteristics of social networking platforms. Like other social networking platforms, the iPhone provides an infrastructure for the distribution of social networking applications. The iPhone's application programming interface also permits applications to access the iPhone's social contact information—specifically, its Address Book and Contacts list. And the iPhone further provides "viral" messaging channels to allow applications to contact others on the iPhone network. Using this platform, game applications for the iPhone can allow iPhone users to connect and interact with other iPhone users as part of social networking games or other applications. The foregoing characteristics make the iPhone a social networking platform.

7.     Zynga is in the business of developing social networking games, and is only interested in developing games for the iPhone *because* of its capabilities as a social networking platform. Competitors of Zynga, who develop and market social networking games, also appear to share the view of the iPhone as a social networking platform, as illustrated by Social Gaming Network, Inc.'s ("SGN") recent development of its iPhone based game iFun. A true and correct copy of the front page of SGN's website at www.sgn.com, with a description of iFun, is attached hereto as **Exhibit A.**

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    copy of the front page of SGN's website at www.sgn.com, with a description of iFun, is attached

2    hereto as **Exhibit A.**

3        I declare under penalty of perjury under the laws of the United States of America and the

4    State of California that the foregoing is true and correct, and that this declaration was executed

5    this 2nd day of February, 2009, in San Francisco, California.

6

7                                         Scott Dale

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT A



# EXHIBIT G

1   JEDEDIAH WAKEFIELD (CSB No. 178058)
    jwakefield@fenwick.com
2   JENNIFER L. KELLY (CSB NO. 193416)
    jkelly@fenwick.com
3   FENWICK & WEST LLP
    555 California Street, 12th Floor
4   San Francisco, CA  94104
    Telephone:   (415) 875-2300
5   Facsimile:    (415) 281-1350

6   HENRY Z. CARBAJAL III (CSB No. 237951)
    hcarbajal@fenwick.com
7   FENWICK & WEST LLP
    Silicon Valley Center
8   801 California Street
    Mountain View, CA  94041
9   Telephone:   (650) 988-8500
    Facsimile:    (650) 938-5200

10

11  Attorneys for Plaintiff
    ZYNGA GAME NETWORK, INC.

12                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                           COUNTY OF SAN FRANCISCO

14

15  ZYNGA GAME NETWORK INC., a          Case No. CGC-09-484557
    Delaware corporation,
16                                       DECLARATION OF KYLE MCEACHERN IN
                  Plaintiff,             SUPPORT OF *EX PARTE* APPLICATION FOR
17                                       TEMPORARY RESTRAINING ORDER TO SHOW
          v.                             CAUSE RE PRELIMINARY INJUNCTION
18
    CLZ CONCEPTS D/B/A AFTERSHOCK       Date:    February 3, 2009
19  INNOVATIONS LLC, JEFF CHEN AND      Time:    11:00 a.m.
    JAMES ZHANG.                        Dept.:   301
20                                       Judge:   Hon. Peter Busch
                  Defendants.
21                                       Date of Filing:  February 3, 2009
                                         Trial Date:      No date set
22

23       I, Kyle McEachern, declare as follows:

24       1.       I am the Director of Product, MMO Studio at Zynga Game Network Inc. ("Zynga")

25  and have been employed at Zynga for approximately 12 months.  I make this declaration of my

26  own personal knowledge, except to any extent otherwise specified.  If called as a witness, I could

27  and would testify competently to the facts set forth herein.

28       2.       I am familiar with the circumstances of Zynga's (formerly Presidio Media, Inc.)

---

DECL. OF KYLE MCEACHERN ISO TRO AND OSC RE          CASE NO. CGC-09-484557
PRELIM. INJUNCTION

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   February 2008 Asset Purchase Agreement with CLZ Concepts, Jeff Chen, James Zhang and

2   Linus Liang, and the February 2008 Employment Agreements Zynga has with Mr. Chen and Mr.

3   Zhang. I am also aware that CLZ, Mr. Chen and Mr. Zhang agreed not to compete with Zynga

4   for a limited time through "the development, marketing or distribution of software applications

5   that have functions and/or features similar to those of the Purchased Applications" according to

6   the Asset Purchase Agreements and Employment Agreements submitted as Exhibits B-D to the

7   accompanying declaration of Zynga's Executive Vice President of Business Development,

8   Andrew Trader.

9         3.     I am familiar with the "Purchased Applications" CLZ sold to Zygna, which are

10   identified in schedule 1.1.1.1 of the Asset Purchase Agreement. I am also aware that in

11   connection with the acquisition of CLZ, Mr. Chen and Mr. Zhang accepted employment with

12   Zynga. I was an employee of Zynga for most of the term of Mr. Chen and Mr. Zhang's

13   employment with Zynga.

14         4.     Included among the Purchased Applications was the most popular application CLZ

15   had made -- its first online game -- called "You're a Hottie," developed for use on the Facebook

16   and Bebo social networks. In the You're a Hottie game, the central objective is to increase your

17   net worth in the form of holdings of virtual "cash," pictorial representations of other game

18   participants called "hotties," and virtual property. The game requires and rewards interaction

19   with friends on the social network and/or strangers within the network that a player would not

20   otherwise communicate with or meet.

21         5.     The Purchased Applications also included an application called "Birthday

22   Meaning." The Birthday Meaning application originally allowed users to submit day and month

23   of their birth for a comment on what their birthday means and a comment on their personal

24   strengths and weaknesses. Mr. Chen and Mr. Zhang, along with another former CLZ partner

25   Linus Liang, continued working on the Birthday Meaning application as Zynga employees. They

26   added a feature called Birthday Wall where the program displays a list of Facebook users

27   celebrating a birthday that day, and allows a user to send a birthday message to one of the

28   individuals on the Birthday Wall.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1       6.     I understand that during negotiations over the purchase of CLZ's assets, CLZ

2 provided a PowerPoint presentation (attached as Exhibit A to the Trader declaration) that

3 described the essential features of its software applications. The essential application features

4 discussed by CLZ identify a ranking function, a "send" function and a "meet" function.

5       7.     I am aware that a few months after Mr. Chen and Mr. Zhang departed from Zynga,

6 they formed another company call Aftershock Innovations LLC. I am also aware that on or about

7 January 19, 2009 Aftershock began selling a social networking game for the Apple iPhone called

8 Mafia Live! I have analyzed and played Mafia Live! and am familiar with the features and

9 functions of the game.

10       8.     In Mafia Live!, the player is an aspiring criminal attempting to form a powerful

11 mafia family. The central objectives of the game are to acquire and increase holdings in the form

12 of virtual "cash," equipment such as guns, cars and defensive apparel and real estate holdings.

13 Another objective is to increase your experience points as a mafia member by either performing

14 "jobs" consisting of a number of criminal activities such as "Auto Theft," or virtually fighting and

15 prevailing over another player's mob family, which also earns cash. Another primary objective

16 of the game is to grow your mafia family by communicating with friends within the social

17 network and strangers within the social network that you would not otherwise meet and

18 convincing them to join your crime family. These game characteristics are nearly identical to

19 Zynga's Mafia Wars game which is popular on social networking websites like Facebook.

20       9.     From my review of the game, Mafia Live! contains all three critical functions that

21 CLZ identified from its description of the critical functions of the applications sold to Zynga in

22 the Asset Purchase Agreement. The program *ranks* players' mafia families in an area of the game

23 called "My Snitch" according to those families with the most members, most fights won, most

24 jobs done and those with the most experience. The game's "Recruit" function allows users to

25 *send* invitations to join the game via email address manually entered or obtained from the

26 Contacts list of a user's iPhone. The game further allows players to *meet* other players within the

27 social network through the Recruit function or by listing random players' mafia families in the

28 "Fight" area of the game and allow a user to pick any listed family to fight.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    10.    I have compared the features and functions of the Mafia Live! game with the

2  Purchased Applications Zynga obtained from CLZ.  There are several striking similarities among

3  Mafia Live! and the Purchased Applications.

4    11.    **Leaderboard Feature:**  Both You're a Hottie and Mafia Live! have a feature that

5  shows leading participants in each game.  In the You're a Hottie Purchased Application, there is a

6  leaderboard of hotties that have accrued the most value, or "Top Hotties," and hottie owners with

7  the most net worth in cash and hotties, called "Top Owners."  Mafia Live! also has a leaderboard

8  function that is unlocked after several levels of play called "My Snitch" which list the families

9  with the most members, most fights won, most jobs done and those with the most experience.

10  True and correct copies of screenshots of the You're a Hottie leaderboards followed by the "My

11  Snitch" area of Mafia Live! are attached hereto as **Exhibit A.**

12    12.    **Recruit Function:**  Both You're a Hottie and Mafia Live! have a feature that

13  allows recruiting of other players to the game.  In the You're a Hottie application, the application

14  lists contacts, or "friends," to whom the player can send invitations to request that they join and

15  participate.  In Mafia Live!, the "Recruit" function allows users to send invitations to join the

16  game via email address manually entered or obtained from the Contacts list of a user's iPhone.

17  Additionally, both games give incentives for the recruitment of additional participants.  You're a

18  Hottie provides a virtual cash bonus for every one of your friends participating in the game.

19  Mafia Live! provides a "loyalty" points incentive that can be used to replenish health, energy or

20  stamina statistics of the player.  True and correct copies of screenshots of the You're a Hottie

21  invitation area followed by the "Recruit" area of Mafia Live! are attached hereto as **Exhibit B.**

22    13.    **Purchase of Property Feature:**  Both You're a Hottie and Mafia Live! have a

23  feature that allows the purchase of property.  In the You're a Hottie application, the game allows

24  for the purchase of real property in the form of mansions and residences to store a player's

25  hotties.  Storage of hotties in a purchased property allows the hottie to accrue additional value.

26  Mafia Live! likewise allows a player to purchase real property in the form of yards, lots and

27  various businesses.  A player accrues additional cash at certain intervals as the holder of real

28  property.  True and correct copies of screenshots of the You're a Hottie property purchase area

1    followed by the "Real Estate Agent" area of Mafia Live! are attached hereto as **Exhibit C**.

2         14.   **Upkeep Payment Feature:** Both games have an "upkeep" payment feature,

3    which requires users to pay an upkeep fee while they own certain property. In the You're a

4    Hottie application, the game requires a player to pay an upkeep at certain time interval for

5    purchased real property. In Mafia Live!, the users are required to pay an upkeep fee at particular

6    time intervals for certain equipment, such as purchased guns, cars and bulletproof vests. A true

7    and correct copy of a screenshot displaying the upkeep obligations in You're a Hottie is included

8    as the first screenshot in Exhibit C. A true and correct copy of a screenshot showing the Mafia

9    Live! upkeep feature is attached hereto as **Exhibit D**.

10        15.   **Sale of Real Estate Feature:** Both the You're a Hottie game and Mafia Live!

11   allow a player to sell back purchased real estate, but at only 50 percent of the price originally paid

12   for the property.

13        16.   **"News Feed" Function:** Both the You're a Hottie game and Mafia Live! have a

14   news feed function. In You're a Hottie, the "Hottie Feed" displays recent actions a player has

15   taken in the game, such as the purchase of hotties, upkeep fees paid and property purchased, in

16   reverse chronological order according to event. In the "My Hood" area of Mafia Live! the

17   "Recent Fights" feed list a player's most recent fights, including the attacker and result, in reverse

18   chronological order. A true and correct copy of a screenshot displaying the "Hottie Feed" in

19   You're a Hottie is included as the first screenshot in Exhibit C. A true and correct copy of a

20   screenshot showing the Mafia Live! Recent Fight feed is attached hereto as **Exhibit E**.

21        17.   **Inventory Feature:** Both applications show the items owned by a player. In

22   You're a Hottie, the "Your Profile" section lists the hotties and property a player owns. The "My

23   Street Cred" section of Mafia Live! lists the equipment and real estate owned by a player. True

24   and correct copies of screenshots of the You're a Hottie "Your Profile" area followed by the "My

25   Street Cred" area of Mafia Live! are attached hereto as **Exhibit F**.

26        18.   **Cash Statistic Feature:** You're a Hottie and Mafia Live! both have a cash

27   statistic feature, which tracks the current amount of cash available to a player. The players cash

28   statistic is visible in most screens of both games and can be seen in the "Your Profile" section of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  You're a Hottie a few lines under the user's name.  In Mafia Live!, the statistic is visible in the

2  upper left hand corner of the screen in the "My Street Cred" area.  The statistics can be seen in the

3  screenshots attached as Exhibit F.

4       19.    Interaction with Non-Players Function: The Birthday Wall application has a

5  feature that lists individuals within the social network having a birthday that day, and gives the

6  player the ability to click on their picture or profile and interact with them by leaving them a

7  message.  In Mafia Live!, the fight function lists individuals playing the game by profile name,

8  and gives you the ability to click on a "Fight" button next to their profile name and interact with

9  them in the form of a virtual fight where the winner gains experience and often "cash."  For both

10 games, the respective functions allow a user to interact with strangers within the network that a

11 player would not otherwise meet.  True and correct copies of screenshots of the Birthday Wall

12 area followed by the "Fight" area of Mafia Live! are attached hereto as Exhibit G.

13      I declare under penalty of perjury under the laws of the State of California that the

14 foregoing is true and correct, and that this declaration was executed this 3rd day of February,

15 2009, in San Francisco, California.

16

17

18                                        Kyle McEachern

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT A





| Cash | Health | Energy | Stamina | Exp | Level |
|------|--------|--------|---------|-----|-------|
| $843k | 14196 | 21/21 | 17/17 | 1234/1346 | 75 |

7.20    2.87
[53-59]

<u>Back to My Hood</u>

My Snitch

## Largest Families (no mercenaries)

| Family | Real Members |
|--------|--------------|
| Unstoppable Family | 3189 |
| BigBen Family | 2649 |
| TRIPLE BEAM DREAM Family | 2570 |
| Khaoticiii Family | 2509 |
| The Lox Family | 2332 |
| Bambino Family | 2222 |

My Hood          Fight          Recent

---

## Most Fearless

| Family | Fights Won |
|--------|------------|
| Country Boys of LA Family | 3743 |
| Crazy Wu Family | 3184 |
| Photoeshopt K Family | 3093 |
| ich Rabio Family | 2606 |
| The sir Family | 2528 |
| Domnie D  Family | 2524 |
| Hopkins Family | 2513 |
| Dissenrt Family | 2460 |
| Jesters Family | 2401 |
| Basile Family | 2312 |

## Most Reckless

My Hood          Fight          Recent

# EXHIBIT B



.ıl AT&T  3G                8:45 PM

Note: To invite from your contacts, click on the
RECRUIT tab. Invitations by Cell = only available for
iPhone users in the US, email invites are global

## Redeem Recieved Invites

Redemption Code 

## Friends receive Redeem Codes when you invite them via the Recruit Tab, or Cell & and Email thebow.

## Invite by Family Code

User Family Code 



My Hood

# EXHIBIT C



AT&T 3G                4:10 PM

| Cash | Health | Energy | Stamina | Exp | Level |
|------|--------|--------|---------|-----|-------|

## Objective: Use All Zen Points

## Back to My Hood

City

Buy Land

| Land Type | | Sell? | Cost/Income |
|-----------|---|-------|-------------|
| Empty Yard | | | Cost: $4.5K +$50 60 min |
| Commercial Lot | | | Cost: $50K +$500 60 min |

My Hood

# EXHIBIT D



# EXHIBIT E



* [Equipment Dealer]    * [My Family]

* [Godfather]           * [My Street Cred]

* [Banker]              *

* [Dal Dottore]

* [Zen Master]

You were attacked by The cutras! You LOST the fight against The cutras...lost $621, and took 14 damage

You were attacked by swaggaz! You LOST the fight against swaggaz...lost $758, and took 9 damage

You were attacked by Cfialianari! You LOST the fight against Cfialianari...lost $859, and took 13 damage

You were attacked by Cfialianari! You LOST the fight against Cfialianari...lost $811, and took 7 damage

You were attacked by Cfialianari! You LOST the fight



My Hood

# EXHIBIT F







# EXHIBIT G



| Cash | Health | Energy | Stamina | Exp | Level |
|------|--------|--------|---------|-----|-------|
| $3572 | 15/103 | 11/11 | 4/4 | 73/105 | 5 |

2:31   3:14
[SSq]

---

**Objective: Use All Zen Points**

* Regain your stamina by using the Zen Master until he has just lost his focus, at any point
* Remember You will regain more Zen points in a new level

---

Fight

| Action | | Opponent |
|--------|---|----------|
| Fight | 1 | **Renzo the Don** <br> Capitalist (L~3) |
| Fight | 1 | **McCheez** <br> Capitalist (L~4) |
| Fight | 1 | **johnny boy** <br> Capitalist (L~1) |

Fight