1  JEDEDIAH WAKEFIELD (CSB No. 178058)
   jwakefield@fenwick.com
2  JENNIFER L. KELLY (CSB No. 193416)
   jkelly@fenwick.com
3  FENWICK & WEST LLP
   555 California Street, 12th Floor
4  San Francisco, CA 94104
   Telephone: (415) 875-2300
5  Facsimile: (415) 281-1350

6  HENRY Z. CARBAJAL III (CSB No. 237951)
   hcarbajal@fenwick.com
7  FENWICK & WEST LLP
   Silicon Valley Center
8  801 California Street
   Mountain View, CA 94041
9  Telephone: (650) 988-8500
   Facsimile: (650) 938-5200
10
   Attorneys for Plaintiff
11 ZYNGA GAME NETWORK, INC.

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                        SAN FRANCISCO DIVISION

15

16 | ZYNGA GAME NETWORK, INC., a | Case No. 3:09-cv-00854 EMC
17 | Delaware corporation |
   | | **PLAINTIFF ZYNGA GAME NETWORK, INC.'S**
18 | Plaintiff, | **NOTICE OF MOTION AND MOTION TO REMAND;**
   | | **SUPPORTING MEMORANDUM OF POINTS AND**
19 | v. | **AUTHORITIES**
20 | CLZ CONCEPTS D/B/A AFTERSHOCK | Date:      April 29, 2009
   | INNOVATIONS LLC, JEFF CHEN AND | Time:      10:30 a.m.
21 | JAMES ZHANG, | Courtroom: C, 15th Floor
   | | Judge:     Magistrate Judge Edward M. Chen
22 | Defendants. |

PL.'S MOTION TO REMAND                                    CASE NO. 3:09-CV-00854 EMC

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ........................................................................................... 1

ISSUES TO BE DECIDED ............................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 2

I. INTRODUCTION .............................................................................................................. 2

II. BACKGROUND ................................................................................................................ 3

III. ARGUMENT ..................................................................................................................... 6

    A. The Face of the Complaint Demonstrates that Zynga's Claims Arise Solely Under State Law ...................................................................................................... 6

    B. Neither of Zynga's Claims are Preempted by Copyright Law ............................... 7

    C. Zynga is Entitled to Costs Incurred as a Result of Improper Removal ................. 12

CONCLUSION .............................................................................................................................. 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Air Prods. & Chems., Inc. v. Reichhold Chems., Inc.*,
  755 F.2d 1559 (Fed. Cir. 1985) .................................................................................................. 7

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) ................................................................................................ 10

*Architectronics, Inc. v. Control Sys., Inc.*,
  935 F. Supp. 425 (S.D.N.Y. 1996) .......................................................................................... 11

*Bowers v. Baystate Techs.*,
  320 F.3d 1317 (Fed. Cir. 2003) .............................................................................................. 10

*Capcom U.S.A., Inc. v. Data East Corp.*,
  No. C 93-3259, 1994 U.S. Dist. LEXIS 5306
  (N.D. Cal. Mar. 16, 1994) ........................................................................................................ 9

*Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987) ................................................................................................................. 7

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) .................................................................................................... 9

*Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't, Inc.*,
  177 F. Supp. 2d 1050 (C.D. Cal. 2001) ................................................................... 6, 7, 10, 11

*Craft & Assocs, Inc. v. College Am., Inc.*,
  477 F. Supp. 2d 1053 (D.S.D. 2007) ...................................................................................... 11

*Data East USA, Inc. v. Epyx, Inc.*,
  862 F.2d 204 (9th Cir. 1988) .................................................................................................... 9

*Emrich v. Touche Ross & Co.*,
  846 F.2d 1190 (9th Cir. 1988) .................................................................................................. 6

*Firoozye v. Earthlink Network*,
  153 F. Supp. 2d 1115 (N.D. Cal. 2001) .................................................................................. 12

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006) .................................................................................................. 9

*Gaus v. Miles, Inc.*,
  980 F.2d 564 (9th Cir. 1992) .................................................................................................... 6

*Grosso v. Miramax Film Corp.*,
  383 F.3d 965 (9th Cir. 2004) ............................................................................................. 8, 11

*Higher Gear Group, Inc. v. Rockenbush Chevrolet Sales, Inc.*,
  223 F. Supp. 2d 953 (N.D. Ill. 2002) ...................................................................................... 10

*Incredible Techs., Inc. v. Virtual Techs., Inc.*,
  400 F.3d 1007 (7th Cir. 2005) .................................................................................................. 9

*JZK, Inc. v. Weaver*,
  No. C06-5477, 2006 U.S. Dist. LEXIS 75523
  (W.D. Wash. Oct. 17, 2006) ............................................................................................. 8, 11

*Kozelek v. Jetset Records*,
  No. C-05-4822, 2006 WL 1530161 (N.D. Cal. June 5, 2006) ................................................. 6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Martin v. Franklin Capital Corp.*,
 546 U.S. 132 (2005) .................................................................................................. 12

*Monogram Indus., Inc. v. Sar Indus., Inc.*,
 64 Cal. App. 3d 692 (1976) ...................................................................................... 10

*Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l Inc.*,
 991 F.2d 426 (8th Cir. 1993) ...................................................................................... 9

*Oddo v. Ries*,
 743 F.2d 630 (9th Cir. 1984) ...................................................................................... 8

*Sinicola v. Warner Bros., Inc.*,
 948 F. Supp. 1176 (E.D.N.Y. 1996) ........................................................................... 9

*Taquino v. Teledyne Monarch Rubber*,
 893 F.2d 1488, 1501 (5th Cir. 1990) .................................................................. 10, 11

*Torah Soft, Ltd. v. Drosnin*,
 224 F. Supp. 2d 704 (S.D.N.Y. 2002) ...................................................................... 11

**STATUTES**

17 U.S.C. § 106 ............................................................................................................. 8, 9

17 U.S.C. § 301 ..................................................................................................... 1, 3, 7, 12

28 U.S.C. § 1441 ................................................................................................................ 6

28 U.S.C. § 1447 ................................................................................................................ 1

28 U.S.C. § 1447(c) ......................................................................................................... 12

Cal. Bus. & Prof. Code § 16600 ...................................................................................... 11

Cal. Bus. & Prof. Code § 16601 ........................................................................................ 2

Cal. Bus. & Prof. Code § 17200 .................................................................................... 2, 3

Cal. Code Civ. Proc. § 1281.4 ............................................................................................ 2

**OTHER AUTHORITIES**

4 Nimmer on Copyright, § 13.03[D], at 13-92 .................................................................. 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION AND MOTION**

NOTICE IS HEREBY GIVEN that on April 29, 2009 at 10:30 a.m., in the Courtroom of the Honorable Magistrate Judge Edward M. Chen, United States Courthouse, Courtroom C, 15th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Zynga Game Network, Inc. ("Zynga") will move this Court to remand this action to state court in favor of Zynga and against defendants CLZ Concepts d/b/a Aftershock Innovations LLC, Jeff Chen and James Zhang (collectively, "Defendants") pursuant to 28 U.S.C. § 1447. This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the papers and pleadings on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Zynga seeks prompt remand of this matter on the ground that the claims set forth in its Complaint arise solely under state law. Zynga also seeks an award of costs and expenses, including attorneys' fees, incurred as a result of Defendants' improper removal.

**ISSUES TO BE DECIDED**

1. Whether Zynga's state law claims for breach of contract and unfair competition are preempted by Section 301 of the Copyright Act, where Zynga's claims arise solely out of Defendants' violation of their agreements to refrain for a period of two years following the sale of their software business from engaging in a competing business, and do not involve rights equivalent to those protected by the Copyright Act.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Zynga filed this action in state court to enjoin Defendants' breach of enforceable non-compete covenants that prohibit them, for two years, from engaging in acts that directly compete with the business they sold to Zynga. Defendants agreed to these limited restraints on their ability to compete, which are fully enforceable under Section 16601 of the California Business and Professions Code, in connection with the sale of substantially all of the assets of their software business to Zynga, for which they were paid over a million dollars and received substantial equity in Zynga. Prior to the sale, Defendants competed head-to-head with Zynga in the market for social networking games—a competitive and rapidly evolving space.

The state court complaint in this case asserts two causes of action arising under state law: breach of contract and violation of Section 17200 of the California Business and Professions Code.[1] As the face of the complaint makes clear, both claims are based solely on Defendants' breach of their promise not to compete, and do not seek redress for any alleged copying, distribution or other use of Zynga's copyrighted content. Lest there be any doubt, Zynga's subsequent filings in the state court expressly state that Zynga *is not suing for any copying of* any protectable expression from any of Zynga's games. Nor need Zynga so plead or prove in order to establish a breach of the non-competes, since the covenants prohibit Defendants' development, marketing or distribution of games regardless of whether they make use of any Zynga content. On the contrary, the non-competes impose restrictions on (1) marketing games for particular *platforms*—regardless of any protectable expression in the games themselves—and (2) on purely *functional* aspects of Zynga's games, which under well-settled law do not fall within the subject matter of copyright. Accordingly, Zynga's claims do not—under any stretch of the imagination—arise under copyright law.

---

[1] On both claims, Zynga has sought only injunctive relief. Zynga has reserved the right to pursue claims in arbitration, pursuant to the parties' arbitration agreement. Pursuant to California Code of Civil Procedure § 1281.4, if an action is found arbitrable, the state court must stay the pending litigation until arbitration takes place or until further order of the court. *Id*. Thus, Zynga may properly avail itself of its right to pursue claims in arbitration notwithstanding the filing of its state court suit seeking only injunctive relief.

PL.'S MOTION TO REMAND                -2-                CASE NO. 3:09-CV-00854 EMC

1    Ignoring this, Defendants removed the action to this Court on the basis that the claims are
2    preempted by Section 301 of the Copyright Act. But even Defendants do not believe this action
3    belongs in federal court. Indeed, up until the day before they removed, Defendants were urging
4    the state court to compel arbitration of the entire action, which they characterized as an
5    "employment dispute." Moreover, Defendants' own removal notice concedes that the allegations
6    of the complaint do not state a copyright claim or otherwise indicate that Zynga's state law claims
7    actually sound in copyright. Given this, and the wealth of controlling authority flatly rejecting
8    Defendants' assertion that the claims Zynga has asserted here are preempted by the Copyright
9    Act, Defendants' removal smacks of bad faith.

10    For the reasons set forth below, Zynga respectfully requests that the case be remanded,
11    and that it be awarded its costs and attorneys' fees incurred as a result of the improper removal.

## II.    BACKGROUND

13    Zynga is a social gaming software company based in San Francisco, California. Zynga
14    offers a range of games such as Texas Hold 'Em poker, strategy games like Sudoku and thematic
15    text based role playing games like "Mafia Wars." Zynga's games are "social games" in the sense
16    that they allow a player to play the game with other members of social networks. Notice of
17    Removal Ex. H (Declaration of Andrew Trader in Support of Zynga's Application for TRO
18    ("Trader Decl.")) ¶¶ 2-3.

19    On January 30, 2009, Zynga commenced this action for injunctive relief against
20    defendants CLZ Concepts d/b/a Aftershock Innovations LLC, Jeff Chen and James Zhang
21    (collectively, "Defendants") by filing its complaint in San Francisco Superior Court. The
22    complaint alleged two causes of action arising purely under state law: breach of contract and
23    violation of Section 17200 of the California Business and Professions Code. Both claims are
24    based on Defendants' breach of enforceable non-compete covenants they agreed to when they
25    sold their business to, and Chen and Zhang were hired by, Zynga in February 2008. These
26    covenants, reflected in both the Asset Purchase Agreement (the "APA") signed by all Defendants
27    and in the employment agreements signed by Chen and Zhang, prohibit Defendants from
28    competing with Zynga in certain ways through February 2010.

PL.'S MOTION TO REMAND                    -3-                     CASE NO. 3:09-CV-00854 EMC

Specifically, the parties agreed that CLZ, Chen and Zhang would not engage in a "Competing Business" for two years following the APA's closing date of February 4, 2008. Section 4.2.1 of the APA defines a "Competing Business" as:

> (i) for purposes of the first year immediately following the Closing Date, any business consisting of any of the following: (A) <u>the development, marketing or distribution of applications for the Facebook platform or other social-networking platforms</u> or (B) <u>the development, marketing or distribution of software applications that have functions and/or features similar to those of the Purchased Applications</u>; and (ii) for purposes of the second year immediately following the Closing Date, <u>the development, marketing or distribution of applications for the Facebook platform or other social-networking platforms that have functions and/or features substantially similar to those developed, marketed or distributed by the Purchaser or otherwise available on the Purchaser's network</u>.

Trader Decl., Ex. B at 18-19 (emphasis added).[2]

Chen and Zhang likewise agreed in their employment agreements with Zynga that they would not directly or indirectly engage in a business that is "Directly Competitive" with Zynga's for two years. The definition of "Directly Competitive" in the employment agreements tracks the definition of "Competing Business" in the APA. Trader Decl. Ex. C at 11, Ex. D. at 11. Zynga insisted on these non-compete provisions to eliminate any concern that CLZ, Chen and Zhang would immediately reorganize and compete against Zynga in the very business that it bought from them, namely, developing and distributing games for social networking platforms. Trader Decl. ¶ 10.[3]

This, unfortunately, is precisely what happened. After eight months of employment, Chen and Zhang quit Zynga on September 2, 2008 and, only six days later, formed CLZ Concepts, LLC. Trader Decl. ¶¶ 19-22. On January 19, 2009, CLZ Concepts (doing business as Aftershock Innovations) released a social networking game for the iPhone called Mafia Live. Trader Decl. ¶¶ 23-24. This lawsuit followed.

The principal—indeed, only—dispute between the parties is whether Defendants have violated their non-compete covenants. As detailed in Zynga's complaint (and the papers it filed

---

[2] Hereinafter, the term "Year One" refers to the first year following the Closing Date (which was February 4, 2008). "Year Two" refers to the second year following the Closing Date.

[3] Defendants were richly compensated for this promise, receiving over a million dollars and substantial equity in Zynga, as well as lucrative positions with the company. *Id*. ¶¶ 7, 11.

in the state court in support of its application for a temporary restraining order and preliminary injunction), Zynga contends Defendants have violated their non-competes in two ways: first, Mafia Live is an application for a *social networking platform*, and thus its development, marketing and distribution violates the non-competes *irrespective* of its functions or features; second, Mafia Live contains *features* and *functions* that are similar to those contained in certain Zynga games. Critically, as Zynga's complaint and subsequent filings have all made clear, Zynga has not alleged that Defendants copied any protectable expression from any Zynga game such as might give rise to a copyright claim. *See* Complaint at 3 (alleging simply that Defendants are "developing, marketing and distributing software on social networking platforms and/or software that has *functions* and/or *features* similar to software applications Plaintiff purchased from Defendants") (emphasis added); Notice of Removal Ex. E (MPA in Support of Zynga's Application for TRO at 12-13, fn. 7) (noting that Zynga does not contend that Defendants' Mafia Live game shares the same expression or imagery as any of the games Zynga purchased from Defendants, "such as might give rise to a claim for copyright infringement or trade secret misappropriation"); *see also* Notice of Removal Ex. W (Reply MPA in Support of Zynga's Motion for Preliminary Injunction) at 4-6.

Defendants themselves concede this lawsuit concerns their compliance with their non-compete covenants, having characterized it as an "employment dispute" in their petition to compel arbitration of the entire dispute, which they filed in the state court the same day they filed their opposition to Zynga's motion for a preliminary injunction, and used as a basis to argue the state court could not grant the interim relief Zynga sought. *See* Notice of Removal Ex. Q (MPA in Support of Defendants' Petition to Compel Arbitration) at 5-7 (arguing that Zynga's filings allege breach of their employment agreements and "other employment related torts").[4] Defendants also concede that the complaint does *not* state a copyright claim on its face. *See* Notice of Removal at 2.

---

[4] The state court subsequently denied the motion for preliminary injunction, and requested further briefing on the arbitrability issue. Notice of Removal, Ex. CC, DD (Minute Orders of 2/20/09). Defendants removed the case one day before Zynga's supplemental briefing was due.

1  Now, however, Defendants apparently have decided they do not wish to face Zynga's
2  contractual claims in arbitration, and would prefer to delay matters with a removal to federal
3  court. But the law is clear that Zynga's claims are in no way preempted under the Copyright Act,
4  and thus, there is no federal subject matter jurisdiction over this case.

## III. ARGUMENT

There is a strong presumption against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *Kozelek v. Jetset Records*, No. C-05-4822, 2006 WL 1530161, at *1 (N.D. Cal. June 5, 2006) (Walker, J.). The removal statute, 28 U.S.C. § 1441, is narrowly construed, with all doubts about the propriety of federal jurisdiction resolved against removal. *Gaus*, 980 F.2d at 566 ("[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance"); *see also Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't, Inc.*, 177 F. Supp. 2d 1050, 1055 (C.D. Cal. 2001). The party seeking removal bears the burden of proving that the federal district court has subject matter jurisdiction. *Gaus*, 980 F.2d at 566; *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). To meet this burden, the party seeking removal must justify its jurisdictional allegations by a preponderance of the evidence. *Gaus*, 980 F.2d at 567.

Where, as here, there is no diversity jurisdiction and the party seeking removal cannot establish that the claims could have been brought originally in federal court on federal question grounds, remand is required. *See Chesler/Perlmutter*, 177 F. Supp. 2d at 1058-59 (remanding action removed on the basis of preemption under Section 301 of the Copyright Act, because defendant failed to carry its burden of establishing that state law claims, as pled, were "completely preempted").

### A. The Face of the Complaint Demonstrates that Zynga's Claims Arise Solely Under State Law

This is a straightforward action for breach of contract and statutory unfair competition under California state law based on Defendants' breach of their covenants not to compete with Zynga for two years after it bought their business.

The purely state law nature of the claims stated in the Complaint should end the analysis.

PL.'S MOTION TO REMAND -6- CASE NO. 3:09-CV-00854 EMC

1   It is settled law that only the "well pleaded complaint" will be examined for purposes of
2   ascertaining the existence of a federal question. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392
3   (1987). Because it is the plaintiff who chooses the law under which to bring suit, federal question
4   jurisdiction is properly measured at the complaint stage of the proceedings. *See Air Prods. &*
5   *Chems., Inc. v. Reichhold Chems., Inc*., 755 F.2d 1559, 1562 (Fed. Cir. 1985);
6   *Chesler/Perlmutter*, 177 F. Supp. 2d at 1058 (whether state law claims are preempted must be
7   determined "solely by the allegations in the [c]omplaint" at the time notice of removal was filed).
8   As "master" of the complaint, a plaintiff who has both federal and state law claims may
9   intentionally and properly choose not to invoke federal jurisdiction and to avoid removal by
10  deciding *not* to assert the federal claims. *Caterpillar*, 482 U.S. at 392; *Chesler/Perlmutter*,
11  177 F. Supp. 2d at 1055.
12      Here, Zynga brought suit under state contract and statutory unfair competition law solely
13  to enforce the non-compete obligations that were such a critical component of its purchase of
14  Defendants' business. The breach of these contractual obligations is the *only* wrongdoing of
15  which Defendants have been accused in the complaint. Critically, Zynga's complaint does not
16  allege that Defendants copied any protectable expression in Zynga's games such as might give
17  rise to a copyright claim. *See generally* Complaint. Defendants concede as much,
18  acknowledging in their removal papers that Zynga's complaint "did not plainly disclose" a
19  copyright claim. Notice of Removal at 2. Under the authority cited above, Zynga's assertion of
20  exclusively state law claims, as expressed on the face of its complaint, requires remand.

21      **B.      Neither of Zynga's Claims are Preempted by Copyright Law.**

22      Defendants allege in their removal papers that Zynga's post-complaint filings and
23  "argument" in the state court revealed that its claims are "equivalent" to a copyright claim, and
24  thus are completely preempted by Section 301 of the Copyright Act. Notice of Removal at 2.
25  Specifically, they point to Zynga's reference in *post-complaint* filings to the "substantial[]
26  similar[ity]" between features and functions of the parties' respective games. Even if it were
27  appropriate to consider materials outside the complaint for purposes of determining whether
28  Zynga's claims sound in copyright (which it plainly is not), controlling authority makes clear that

PL.'S MOTION TO REMAND               -7-                    CASE NO. 3:09-CV-00854 EMC

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Zynga's claims are not preempted. This is not a close call.

2   The Ninth Circuit has adopted a two-part test to determine whether a state law claim is
3   preempted by the Copyright Act. First, the work at issue must come within the subject matter of
4   copyright. Second, the state law rights must be equivalent to the exclusive rights under
5   Section 106 of the Copyright Act. *JZK, Inc. v. Weaver*, No. C06-5477, 2006 U.S. Dist. LEXIS
6   75523, at *8-9 (W.D. Wash. Oct. 17, 2006) (citing *Grosso v. Miramax Film Corp.*, 383 F.3d 965,
7   968 (9th Cir. 2004)); *see also Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984). The inquiry under
8   the second part of the test is whether the state law claim has an "extra element" that renders the
9   claim qualitatively different from a copyright claim. *Grosso*, 383 F.3d at 968. Zynga's claims do
10  not pass the preemption test for the simple reason that they do not seek to enforce rights
11  equivalent to any of the exclusive rights under copyright.

12  As an initial matter, the allegations of the complaint make clear Zynga has not even
13  alleged that Defendants made any *use* of copyrightable content owned by Zynga, much less that
14  Defendants have violated any of the exclusive rights under Section 106 of the Copyright Act
15  (copying, distribution, creation of derivative works, etc.). Instead, Zynga has alleged that
16  Defendants breached their <u>*contractual promise not to compete*</u> with Zynga. Zynga has alleged
17  Defendants did so in two ways: <u>*one*</u>, by developing, marketing and distributing software
18  applications for social networking platforms, and <u>*two*</u>, by developing, marketing and distributing
19  software applications that contain "functions and/or features" that were prohibited by the parties'
20  agreements. Complaint at 3 (¶ BC-2).[5] Neither of these acts of breach has anything to do with
21  the copying or other use of any of Zynga's copyrightable content; indeed, the allegation that
22  Defendants breached their non-competes merely by distributing applications for a "social
23  networking platform" does not concern (much less depend on) any similarity. Rather, the breach
24  occurred simply by virtue of Defendants having developed, marketed and distributed *any*
25  application for a social networking platform. *See id*. This is not even arguably related to any of

26

27  [5] As the language of the non-competes (quoted on page 4 of the complaint) demonstrates,
    although Zynga has alleged that Defendants have engaged in both acts, either one, alone,
28  constitutes a violation of Defendants' Year One obligations.

PL.'S MOTION TO REMAND                        -8-                         CASE NO. 3:09-CV-00854 EMC

1  the exclusive rights under Section 106 of the Copyright Act.

2  Nor does Defendants' breach of their non-competes based on use of developing "functions and/or features" that are similar (even "substantially" or "strikingly" similar) to those contained in Zynga's games implicate any such exclusive rights.  The reason is simple:  the "similarity" at issue in the parties' non-compete does not depend on similarity of copyrightable content.  Courts have consistently held that <u>functions</u> and <u>features</u> of software, including video games, are *not* protected by copyright.  *See Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l Inc*., 991 F.2d 426, 434 (8th Cir. 1993) ("copyright protection in computer software does not extend to the software's function"); *Data East USA, Inc. v. Epyx, Inc*., 862 F.2d 204, 209 (9th Cir. 1988) (features that follow from the idea of a certain genre of video game are not protectable under copyright); *Incredible Techs., Inc. v. Virtual Techs., Inc*., 400 F.3d 1007, 1011-12 (7th Cir. 2005) (functional elements and basic features of video game not entitled to copyright protection); *Capcom U.S.A., Inc. v. Data East Corp*., No. C 93-3259, 1994 U.S. Dist. LEXIS 5306, at *23-24 (N.D. Cal. Mar. 16, 1994) (same).[6]

Thus, Defendants' reliance on selected phrases from Zynga's post-complaint filings referencing the "substantial similarity" between *functional* aspects of the games completely misses the mark.  While "substantial similarity" is indeed a term of art in the copyright world, it has significance only when referring to similarity of *protectable expression*.  No amount of similarity of *unprotectable* content (such as ideas, content not original to the copyright claimant, *scenes a faire*, or <u>functional</u> aspects or features of video games) can give rise to a copyright claim.  Accordingly, an allegation that a defendant copied or even "ripped off" non-protectable content simply does not state a copyright claim.  *See* 4 Nimmer on Copyright, § 13.03[D], at 13-92; *Sinicola v. Warner Bros., Inc*., 948 F. Supp. 1176, 1190 (E.D.N.Y. 1996).

In agreeing to the non-compete provisions in this case, the parties contractually agreed to define a field of *competition* by reference to similarities—not between protectable expression in

---

[6] Copyright provides no protection for expression unoriginal to the author, ideas merged with expression, or generic or "stock" elements of the genre or category of works at issue—all of which must be filtered out and disregarded before performing an infringement analysis.  *See Cavalier v. Random House, Inc*., 297 F.3d 815, 822-23 (9th Cir. 2002); *Funky Films, Inc. v. Time Warner Entm't Co., L.P*., 462 F.3d 1072, 1077, 1081 (9th Cir. 2006).

1 works of authorship—but rather between functions and features—that is, the things the products
2 do. Courts enforcing contractual non-competes routinely examine "similarity" between
3 businesses and their products. *See, e.g.*, *Monogram Indus., Inc. v. Sar Indus., Inc.*, 64 Cal. App.
4 3d 692, 700 (1976) (discussing similarities in toilets in concluding that defendants were "engaged
5 in a business 'similar' to or 'like'" that of Plaintiff). Yet such claims are not preempted. *See*
6 *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (affirming district
7 court's conclusion that contract claim based on violation of non-compete was not preempted,
8 even where breaches included use of copyrighted materials.).

9 Second, and independently, the Ninth Circuit (along with most other courts) has held that
10 the Copyright Act does *not* preempt claims based on breach of a contractual promise, even those
11 that are—unlike the instant claims—based on the use of copyrightable content. *Altera Corp. v.*
12 *Clear Logic, Inc*., 424 F.3d 1079, 1089 (9th Cir. 2005) ("Most courts have held that the Copyright
13 Act does *not* preempt the enforcement of contractual rights. . . . We find the logic of these cases
14 persuasive here.") (emphasis in original); *Chesler/Perlmutter*, 177 F. Supp. 2d at 1058 ("A
15 majority of courts have found that breach of contract claims are not preempted. . . ."); *see also*
16 *Bowers v. Baystate Techs*., 320 F.3d 1317, 1324 (Fed. Cir. 2003) (applying First Circuit law,
17 finding "most courts to examine this issue have found that the Copyright Act does not preempt
18 contractual constraints on copyrighted articles").[7]

19 The logic employed by the many courts that have concluded contract claims are not
20 preempted is that such claims contain the "extra element" that renders the claim qualitatively
21 different from a copyright claim—namely, a promise between the parties that changes the nature

22

---

23 [7] Not surprisingly, Defendants' notice of removal cites only a single, out-of-circuit case
discussing preemption of a claim for breach of an express contract, *Higher Gear Group, Inc. v.*
24 *Rockenbush Chevrolet Sales, Inc*., 223 F. Supp. 2d 953 (N.D. Ill. 2002). But even this case does
not support Defendants' position. Although the opinion suggests that the contract claim there
25 could be preempted "to the extent that" it is based on "nothing more than the act of
infringement," the court ultimately concluded the claim was not preempted. *Higher Gear Group,*
26 223 F. Supp. 2d at 958. Moreover, as shown above, none of Zynga's allegations in support of its
contract claim are based on acts of infringement. Moreover, to the extent *Higher Gear* suggests
27 that allegations in support of a contract claim can be "parsed" to determine whether a claim is
partially preempted, it is not in line with Ninth Circuit authority, which does not engage in such
28 parsing.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1 of the claim. *Grosso*, 383 F.3d at 968; *Chesler/Perlmutter*, 177 F. Supp. 2d at 1058-59; *JZK*,
2 2006 U.S. Dist. LEXIS 75523, at *11-12; *Torah Soft, Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 716
3 (S.D.N.Y. 2002); *Craft & Assocs, Inc. v. College Am., Inc.*, 477 F. Supp. 2d 1053, 1056 (D.S.D.
4 2007); *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 438-39 (S.D.N.Y. 1996). As
5 the district court explained in *Torah Soft*, this contractual promise renders the claim qualitatively
6 different because it creates a new right that can be enforced only against the party who gave the
7 promise, not against the world, as in copyright. *Torah Soft*, 224 F. Supp. 2d at 716 (noting that
8 contractual promise comprised an extra element because, in the absence of the promise, the
9 defendants' conduct might give rise to a copyright claim but not a contract claim).

10       Under this authority, there is no doubt Zynga's contract claim contains the requisite extra
11 element that renders it qualitatively different from a copyright claim. Zynga bargained for, paid
12 over a million dollars for, and received Defendants' promise that, for two years, they would not
13 compete with Zynga in the market for social networking games. Absent this promise, Defendants
14 would have been free (as was anyone else) to develop games for social networking platforms
15 during Year One, and to develop games for social networking platforms that contain basic, non-
16 protectable functions and features of Zynga's games during Year Two. Zynga's claim merely
17 seeks to enforce Zynga's bargained for right to be free of competition from Defendants through
18 acts that, absent a contract, they otherwise could lawfully engage in, and as such, plainly sounds
19 in contract, and not in copyright. *Taquino*, 893 F.2d at 1501 (promise not to compete was extra
20 element); *JZK*, 2006 U.S. Dist. LEXIS 75523, at *11-13 (breach of contract claim seeking to
21 enforce defendant's agreement that they not teach or disseminate information learned at
22 plaintiff's seminars at competing seminars not preempted because such promise was an "extra
23 element"). Moreover, the enforceability of non-compete provisions under California law requires
24 compliance with California Business and Professions Code § 16600, *et seq.,* another "extra
25 element" that renders Zynga's breach of contract claim qualitatively different than a copyright
26 claim.

27       Finally, the preemption analysis for Zynga's unfair competition claim is exceedingly
28 simple: because that claim is predicated on Defendants' unlawful breach of their non-compete

PL.'S MOTION TO REMAND     -11-     CASE NO. 3:09-CV-00854 EMC

covenants (Complaint at 5, ¶ UC-2), it is not preempted for the same reason Zynga's contract claim is not preempted. *See Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1131 (N.D. Cal. 2001) (unfair competition claim is preempted only to the extent that the claim on which it is based is preempted).

Accordingly, Defendants have not and cannot carry their burden of showing that Zynga's claims are preempted by Section 301 of the Copyright Act. As such, there is no federal question—and hence, no basis to be in this Court. Remand is required.

### C. Zynga is Entitled to Costs Incurred as a Result of Improper Removal

Defendants should be required to pay Zynga's costs and attorneys' fees incurred as a result of the removal. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

Such an award is appropriate here, where Defendants had no objectively reasonable basis for removing the case. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (standard for awarding fees "turn[s] on the reasonableness of the removal"). Given Defendants' own position that this dispute arises out of their agreements, and that the complaint does not state a copyright claim on its face, the removal should be seen for precisely what it is: a purely tactical move designed to delay the case and drive up Zynga's costs. Indeed, given the wealth of controlling authority eliminating any doubt that the claims Zynga has asserted here are not preempted, it is difficult to conceive how Defendants could have legitimately believed they had a valid basis to remove. An award to Zynga of its "just costs and any actual expenses, including attorney fees" (which will be submitted with Zynga's reply papers) should therefore accompany this Court's order for remand to state court.

///
///
///
///
///

**CONCLUSION**

For the foregoing reasons, the Court should promptly remand the action, and award Zynga its fees and costs.

Dated: March 25, 2009           FENWICK & WEST LLP


                                By:     **/s/ Jedediah Wakefield**
                                            Jedediah Wakefield

                                Attorneys for Plaintiff
                                ZYNGA GAME NETWORK INC.

26351/00402/SF/5255589.9