1   ANNETTE L. HURST (STATE BAR NO. 148738)
    ahurst@orrick.com
2   MICHAEL D. WEIL (STATE BAR NO. 209056)
    mweil@orrick.com
3   CHRISTIAN N. BROWN (STATE BAR NO. 233147)
    cbrown@orrick.com
4
    ORRICK, HERRINGTON & SUTCLIFFE LLP
5   The Orrick Building
    405 Howard Street
6   San Francisco, CA  94105-2669
    Telephone:   +1-415-773-5700
7   Facsimile:   +1-415-773-5759
8
    Attorneys for Defendants
9   Aftershock Innovations LLC (erroneously named as CLZ
    Concepts LLC d/b/a Aftershock Innovations LLC), Jeff
10  Chen and James Zhang

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

15  ZYNGA GAME NETWORK, INC.,          CASE NO.  C 09-854 VRW

16              Plaintiff,             **DEFENDANTS' OPPOSITION TO
                                       MOTION FOR REMAND;
17       v.                            DECLARATION OF ANNETTE
                                       HURST; EXHIBIT**
18  CLZ CONCEPTS d/b/a AFTERSHOCK
    INNOVATIONS LLC, JEFF CHEN, and    **[REQUEST FOR JUDICIAL
19  JAMES ZHANG,                       NOTICE FILED
                                       CONCURRENTLY]**
20              Defendants.
                                       Date: June 4, 2009
21                                     Time: 10:30 a.m.
                                       Courtroom: 6, 17th Floor
22                                     Judge: Chief Judge Vaughn R. Walker
23

24

25

26

27

28

1

## **<u>TABLE OF CONTENTS</u>**

2

**Page**

3 INTRODUCTION ........................................................................................ 1

4 STATEMENT OF FACTS ......................................................................... 2

5      A.    Procedural History ................................................................ 2

6      B.    Summary Of Parties And Claims ..................................... 3

7

8 ARGUMENT .............................................................................................. 6

9 I.    PLAINTIFF CANNOT HIDE BEHIND THE *"WELL-PLEADED COMPLAINT"* RULE NOR IGNORE ITS FILINGS AND STATEMENTS

10     MADE AFTER THE FILING OF THE FORM COMPLAINT .......................... 6

11 II.   THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER THIS

12     ACTION ............................................................................................... 9

13      A.    If Any Single Claim Of The Complaint Is Preempted By The Copyright Act, This Court Has Jurisdiction Over The Entire Action ......... 9

14

15      B.    The Subject Matter Of This Action Falls Within The Copyright Act ........ 10

16      C.    Plaintiff Has Not Established An *"Extra Element"* That Would Defeat Preemption As To All Claims ........................................................ 12

17

18          1.    Plaintiff's Unfair Competition Claim Is Preempted ....................... 13

19          2.    Plaintiff's Claim For Breach Of The Year Two Restriction Also Is Preempted ........................................................................ 15

20

21 CONCLUSION ........................................................................................ 18

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

*Air Prods. & Chems, Inc. v. Reichhold Chems, Inc.*,
  755 F.2d 1559 (Fed. Cir. 1985) ............................................................. 8

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) ............................................................. 15

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) .............................................................. 17

*Atari, Inc. v. Amusement World, Inc.*,
  547 F. Supp. 222 (D. Md. 1981) ......................................................... 17

*Atari, Inc. v. North Am. Philips Consumer Elec. Corp.*,
  672 F.2d 607 (7th Cir. 1982) .............................................................. 17

*Bowers v. Baystate Techs. Inc.*,
  320 F.3d 1317 (Fed. Cir. 2003) ........................................................... 15

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004) ........................................................... 7, 10

*Bright v. Bechtel Petroleum, Inc.*,
  780 F.2d 766 (9th Cir. 1986) ............................................................... 8

*Broderbund Software v. Unison World, Inc.*,
  648 F. Supp. 1127 (N.D. Cal. 1986) .................................................... 17

*Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987) ....................................................................... 6, 7

*Chesler/Perlmutter Prods., Inc. v. Fireworks Entmn't, Inc.*,
  177 F. Supp. 2d 1050 (C.D. Cal. 2001) ........................................... 8, 16

*ConnectU LLC v. Zuckerberg*,
  522 F.3d 82 (1st Cir. 2008) ................................................................. 9

*Data East USA, Inc. v. Epyx, Inc.*,
  862 F.2d 204 (9th Cir. 1988) ............................................................. 11

*Dielsi v. Falk*,
  916 F. Supp. 985 (C.D.Cal.1996) ..................................................... 7, 8

*Eyak Native Village v. Exxon Corp.*,
  25 F.3d 773 (9th Cir. 1994) ............................................................. 8, 9

*Firoozye v. Earthlink Network*,
  153 F. Supp. 2d 1115 (N.D. Cal. 2001) ...................................... 7, 8, 11, 14

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

## TABLE OF AUTHORITIES
### (continued)

Page

*Grosso v. Miramax Film Corp.*,
   383 F.3d 965 (9th Cir. 2004) .................................................................... 15

*Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*,
   223 F. Supp. 2d 953 (N.D. Ill. 2002) ........................................................ 18

*Jass v. Prudential Health Care Plan, Inc.*,
   88 F.3d 1482 (7th Cir. 1996) ...................................................................... 8

*Johnson Controls v. Phoenix*,
   886 F.2d 1173 (9th Cir. 1989) .................................................................. 11

*Kabehie v. Zoland*,
   102 Cal. App. 4th 513 (2002) .............................................................. 13, 15

*Kodadek v. MTV Networks, Inc.*,
   152 F.3d 1209 (9th Cir. 1998) ...................................................... 9, 10,13, 14

*Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*,
   964 F.2d 965 (9th Cir. 1992) .................................................................... 11

*Lotus v. Borland*,
   49 F.3d 807 (1st Cir. 1995),
   *aff'd by an equally divided court*, 516 U.S. 233 (1996) .............................. 11

*Lyons v. Alaska Teamsters Employer Serv. Corp.*,
   188 F.3d 1170 (9th Cir. 1999) .................................................................... 7

*Metropolitan Life Ins. Co. v. Taylor*,
   481 U.S. 58 (1987) ...................................................................................... 7

*Micro Star v. FormGen, Inc.*,
   154 F.3d 1107 (9th Cir. 1998) .................................................................. 11

*National Basketball Ass'n v. Motorola, Inc.*,
   105 F.3d 841 (2d Cir. 1997) ...................................................................... 11

*National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*,
   991 F.2d 426 (8th Cir. 1993) .................................................................... 15

*ProCD, Inc. v. Zeidenberg*,
   86 F.3d 1447 (7th Cir. 1996) .............................................................. 11, 15

*Rosciszewski v. Arete Assocs., Inc.*,
   1 F.3d 225 (4th Cir. 1993) ...................................................................... 7, 18

*Selby v. New Line Cinema Corp.*,
   96 F. Supp. 2d 1053 (C.D. Cal. 2000) ...................................................... 16

*Sid & Marty Krofft Tel. Prods. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977) .................................................................. 17

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Sinicola v. Warner Bros., Inc.*,
    948 F. Supp. 1176 (E.D.N.Y. 1996)..................................................................17

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
    7 F.3d 1434 (9th Cir. 1993).........................................................................13, 14

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008).........................................................................14

*Walker v. University Books, Inc.*,
    602 F.2d 859 (9th Cir. 1979).........................................................................14

*Worth v. Universal Pictures, Inc.*,
    5 F. Supp. 2d 816 (C.D.Cal.1997).................................................................7, 10

*Wrench LLC v. Taco Bell Corp.*,
    256 F.3d 446 (6th Cir. 2001)..........................................................11, 13, 15, 16

**STATUTES**

17 U.S.C. § 301 ................................................................................................7

28 U.S.C. § 1446(b) ........................................................................................8

Cal. Bus. & Prof. Code § 16600 ....................................................................18

Cal. Bus. & Prof. Code § 17200 ........................................................2, 4, 13 14

**OTHER AUTHORITIES**

1-1 Melvin B. Nimmer & David Nimmer, Nimmer on Copyright  (2009)......................15

Websters II New College Dictionary (Houghton Mifflin 2001) ........................................16

DEFENDANTS' OPPOSITION TO MOTION TO REMAND

1

## **INTRODUCTION**

2      Plaintiff has moved to remand on the grounds that its complaint only alleges state

3 law claims.  In assessing jurisdiction, according to Plaintiff, this Court may only consider

4 that complaint as a result of the "well-pleaded complaint" rule.  Furthermore, Plaintiff

5 argues that its claims are not preempted by the Copyright Act because neither breach of

6 contract claims nor claims for unfair competition that are premised on a breach of contract

7 claim are preempted  Finally, Plaintiff avers that the breach involved distribution of things

8 that are not protected by copyright and therefore the Copyright Act is not a consideration.

9 These arguments lack merit.

10      The "well-pleaded complaint" rule does not apply.  Plaintiff cannot avoid federal

11 jurisdiction by pleading only state law claims.  The Copyright Act completely preempts

12 state law.  When, as here, a copyright preemption defense is raised, this Court must accept

13 jurisdiction.  Moreover, even were the "well-pleaded complaint" rule to apply, the

14 removal statute expressly allow courts to consider "motions" and "other papers" when

15 determining whether there is federal question jurisdiction.  *See* Argument I, *infra.*

16      Additionally, the claims are properly before this Court.  Plaintiff's claims—as

17 more fully explained in the papers it filed in California state court seeking an injunction—

18 clearly satisfy the standards for removal.  *See* Argument II.B, II.C.

19      Plaintiff claims that Defendants breached two contracts because they distributed

20 software and a videogame.  Software and videogames fall within the "subject matter" of

21 the Copyright Act. While Plaintiff argues that its claims relate to the aspects of

22 Defendants' videogame that are not protected by the Copyright Act, they do not.  Even

23 were it true, that is an irrelevant consideration.  It is enough, as Plaintiff concedes, that

24 videogames and software are protected by the Copyright Act. *See* Argument II.B, *infra.*

25      Moreover, Plaintiff asserts state law rights that are equivalent to those protected by

26 the Copyright Act.  Plaintiff's unfair competition claim has already been found by the

27 Ninth Circuit to be preempted by the Copyright Act for this reason.  And Plaintiff has

28 made this same argument, successfully, in a matter before this Court.  *See* Argument II.

1    C.1, *infra*.

2           The result does not change because Plaintiff has alleged a breach of contract action.

3    As to Defendant Aftershock Innovations LLC, there is no breach of contract claim.   It is

4    not a party to the agreements at issue.   And Plaintiff has acknowledged that it is not a

5    d/b/a of any Defendant.   As for the remaining Defendants, an unfair competition claim

6    cannot be premised on the mere breach of a contract, which is all this case presents.   *Id.*

7           By their contract claim, Plaintiff is seeking to enforce agreements that bar

8    Defendants from copying and distributing games that are "substantially similar" to

9    Plaintiff's.   As Plaintiff has to admit this "is indeed a term of art in the copyright world."

10   Mot. 9.   And Plaintiff's complaint is centered around the distribution of a game that it

11   claims looks likes its own.   That is a copyright claim.   *See* Argument II. C.2, *infra*.

12          For these reasons, this case cannot be remanded.

### STATEMENT OF FACTS

**A.      Procedural History**

15          On January 30, 2009, Plaintiff filed a five page form complaint in California

16   Superior Court, alleging breach of contract and a violation of California's Unfair

17   Competition Law, Business and Professions Code § 17200.   Notice of Removal Exs. A, B

18   (Complaint and Summons).[1]   The Defendants were named as CLZ Concepts d/b/a

19   Aftershock Innovations LLC, Jeff Chen and James Zhang.

20          On February 3, 2009, Plaintiff filed an Application for Temporary Restraining

21   Order to Show Cause re Preliminary Injunction and supporting declarations.   Plaintiff did

22   not obtain the TRO but nonetheless pursued a preliminary injunction.   In its supporting

23   papers, Plaintiff explained the basis of its lawsuit—that Defendants had and were

24   providing a videogame for the iPhone that was "substantially similar" to its own games.

25   Notice of Removal Exs. D – I (Papers and Declarations filed in Support of Injunction); *see*

26   *also* Notice of Removal Exs. W, Y (Plaintiff's Reply to Opposition to Injunction and

27   _____

28   [1] The Notice of Removal, filed February 27, 2009, appears on this Court's docket as Docket Nos.
     1 to 3.

1   Declarations filed in Support).

2       On February 11, 2009, Defendants opposed the request for an injunction and also

3   filed papers seeking to compel arbitration.  Notice of Removal Exs. K – M, S – V (Opp. to

4   TRO, Opp. to Preliminary Injunction, and Declarations filed in Support); Notice of

5   Removal Ex. Q (Motion to Compel Arbitration).  Plaintiff opposed and Defendants later

6   withdrew their motion to compel arbitration.  Ex. DD to Notice of Removal (Notice of

7   Withdrawal).

8       On February 20, 2009, after a hearing on Plaintiff's motion for a preliminary

9   injunction, the California Superior Court (Judge Peter Busch, presiding in Law and

10  Motion) denied Plaintiff's motion for preliminary injunction, holding that Plaintiff has

11  failed to establish a likelihood of success that the iPhone is a social networking platform

12  under the terms of the agreements.  Notice of Removal Ex. BB (Order).  On February 27,

13  2009, Defendants answered the complaint, noting, among other things, that "Plaintiff's

14  claims are preempted by federal copyright law as set forth in 17 U.S.C. § 301 and

15  controlling case law."  Notice of Removal Ex. EE (Answer) at 2 ¶ 1.

16      On February 27, 2009, within 28 days of the filing of the complaint and within 24

17  days of the filing of Plaintiff's motion for an injunction, Defendants filed their Notice of

18  Removal.  Dkt. Nos. 1 to 3.

19      **B.    Summary Of Parties And Claims.**

20      Defendants Jeff Chen and James Zhang were owners of the now-defunct Defendant

21  CLZ Concepts, a company that created games for social networking sites.  As alleged by

22  Plaintiff, on February 4, 2008, Defendants Chen and Zhang agreed to sell the assets and

23  goodwill of CLZ Concepts to Plaintiff Zynga pursuant to an Asset Purchase Agreement.

24  Notice of Removal Ex. A (Complaint); Notice of Removal Ex. E (Memo P&As In

25  Support of Injunction) at 2.  The parties to this agreement were Plaintiff, CLZ Concepts,

26  and Jeff Chen, James Zhang and Linus Liang, the then-owners of CLZ.  Notice of

27  Removal Ex. B to Ex. H (Decl. of Andrew Trader).

28      In connection with the sale of all of the assets and goodwill of CLZ Concepts, Jeff

- 3 -

1   Chen and James Zhang entered into employment agreements with Plaintiff, and worked

2   there from shortly after the time of the Asset Purchase until September 2, 2008.  After

3   they left Plaintiff's employ, in November 2008 they started a new company called

4   Aftershock Innovations LLC.  Notice of Removal Ex. E (Memo P&As In Support of

5   Injunction) at 4-5; Notice of Removal Exs. C, D to Ex. H (Decl. of Andrew Trader);

6   Notice of Removal Ex. L (Decl. of Jeff Chen) at 6-7 ¶¶ 19-20; Notice of Removal Ex. M

7   (Decl. of James Zhang) at 4-5 ¶¶ 11-12.

8        Aftershock Innovations LLC came into existence in November 2008 as a

9   California limited liability company, and has since been converted to a Delaware

10   corporation.  *See* Request for Judicial Notice Exs. A, B.  It is not a party to either the

11   Asset Purchase Agreement or the employment agreements.  *See* Notice of Removal Ex. H

12   (Decl. of Andrew Trader) Exs. B, C, D.  The Complaint conspicuously omits Aftershock

13   in naming the parties to the alleged agreements.  Notice of Removal Ex. A (Complaint) at

14   3 ¶ BC-1.  Indeed, as Plaintiff admits, Aftershock did not exist when the agreements at

15   issue were executed in February 2008.  *See* Ex. G to Notice of Removal (Decl. of Kyle

16   McEachern) at 3 ¶ 7 (noting that Chen and Zhang "departed from Zynga [and] formed

17   another company call [sic] Aftershock Innovations LLC").

18        Nor is Aftershock Innovations LLC a "d/b/a" of CLZ Concepts.  Plaintiff

19   acknowledged this only four days after filing its complaint in its injunction papers.  Notice

20   of Removal Ex. H (Decl. of Andrew Trader) at 6 ¶ 23 (Aftershock "was registered with

21   the California Secretary of State on or about November 7, 2008, . . . after Mr. Chen and

22   Mr. Zhang's departure from Zynga").  Recently, Zynga's counsel expressly confirmed to

23   Aftershock's counsel that Zynga intends Aftershock to be a separately named Defendant

24   in this lawsuit.  Hurst Decl. ¶ 2.

25        As noted above, the Complaint filed by Plaintiff is a bare-bones California Judicial

26   Council "form" complaint that provided little detail concerning the facts underlying the

27   claims alleged.  Plaintiff simply alleged that Defendants breached the agreements they

28   entered into with Plaintiff and violated Section 17200 by doing so.  Plaintiff block-quoted

- 4 -

1  the relevant provisions of the Asset Purchase Agreement and Employment Agreements

2  that it claims Defendants breached, specifically Section 4.2.1 of the Asset Purchase

3  Agreement and paragraph 7(b)(ii) of the employment agreements, and then repeated those

4  allegations in support of the unfair competition claims.  Notice of Removal Ex. A

5  (Complaint) at 4-5.  The only facts provided were that (1) CLZ Concepts, Jeff Chen and

6  James Zhang entered into an Asset Purchase Agreement and employment agreements with

7  Plaintiffs, (2) they started Aftershock Innovations LLC, and (3) they breached those

8  agreements.  *Id.* at 3 (noting that Defendants started Aftershock and breached the

9  agreements by "developing, marketing and distributing software with "features and/or

10  functions similar to software applications Plaintiff purchased from Defendants").

11       When Plaintiff filed its unsuccessful motion for an injunction, it elaborated

12  substantially upon the nature of its claims.  In particular, Plaintiff claimed that Defendants

13  violated the Asset Purchase and employment agreements because they developed and

14  distributed a videogame for the iPhone called Mafia Live! that is "substantially similar" to

15  its own, including its Mafia Wars game.  *See* Notice of Removal Ex. E (Memo P&As In

16  Support of Injunction) at 6-8.  As Plaintiff explained at the hearing on its motion, "[i]f you

17  look at the feature and function similarities between Mafia Wars [Plaintiff's game] and

18  Mafia Live! [Defendants' game], they are substantially similar, and they're substantially

19  similar *not merely in what you would be out talking about in an intellectual property case*

20  . . . ."  Ex. C to Request for Judicial Notice at 20:7-9 (emphasis added).

21       These actions, Plaintiff alleges, breached the Asset Purchase Agreement and the

22  employment agreements.  Plaintiff has two separate theories of breach:  that CLZ, Chen

23  and Zhang breached the "Year One" obligations, and that these Defendants breached the

24  "Year Two" obligations, the latter prohibiting the "development, marketing or distribution

25  of *substantially similar*" software features and functions."  Notice of Removal Ex. A

26  (Complaint) at 4; Ex. B § 4.2.1 and Exs. C, D ¶ 7(b)(ii) to Ex. H (Decl. of Andrew

27  Trader).  Plaintiff makes no allegation that Defendant Aftershock was a party to either of

28  these contracts; to the contrary, as noted above, it did not and could not have alleged that

- 5 -

1   Aftershock was one of the parties to these agreements.

2      The unfair competition claims are wholly derivative of the contract claims.

3   Plaintiff offers no explanation as to any independent legal duty that forms the basis for its

4   unfair competition claim against Defendant Aftershock.

5                                      **ARGUMENT**

6   **I.   PLAINTIFF CANNOT HIDE BEHIND THE "WELL-PLEADED
        COMPLAINT" RULE NOR IGNORE ITS FILINGS AND STATEMENTS
7       MADE AFTER THE FILING OF THE FORM COMPLAINT.**

8      Plaintiff argues that this Court is bound to look only at its framing of its complaint

9   in assessing federal question jurisdiction.  Since it did not allege a copyright claim,

10  according to Plaintiff that is the end of the story in assessing subject matter jurisdiction.

11  Mot. at 6-10.  This argument is overly simplistic and incorrect as it completely ignores the

12  applicable doctrine of complete preemption.

13     It is ironic, to say the least, that Plaintiff relies upon the "well-pleaded complaint"

14  rule after (a) filing a "form complaint"—the bare minimum document that could be used

15  to initiate a case in state court, and (b) mis-naming Defendant Aftershock as merely a

16  "dba" of another Defendant so that it appeared not to be a separate party when all the

17  while Plaintiff had every intention of pursuing claims against it as a separate entity.  *See*

18  Notice of Removal Ex. G (Decl. of Kyle McEachern) at 3 ¶ 7 (noting that Chen and

19  Zhang "departed from Zynga [and] formed another company call [sic] Aftershock

20  Innovations LLC"); Notice of Removal Ex. H (Decl. of Andrew Trader) at 6 ¶ 23

21  (Aftershock "was registered with the California Secretary of State on or about November

22  7, 2008, . . . after Mr. Chen and Mr. Zhang's departure from Zynga"); Hurst Decl. ¶ 2;

23  Request for Judicial Notice, Exs. A, B.[2]

24     Even apart from Plaintiff's sleight-of-hand in relying upon a minimalist and

25  misleading pleading, Plaintiff cannot hide behind the "well-pleaded complaint" rule in this

26  case.  As expressly noted in *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987), the case

27  _____
    [2] It defies credulity that Zynga was not fully aware of Aftershock's status when it filed the
28  Complaint on January 30, given that the declarations setting forth its evidence as to that status
    were filed only four days later on February 3.

                                         - 6 -

1   Plaintiff invokes to support its argument (Mot. at 7), there is a corollary to the well-

2   pleaded complaint rule.  It is the complete preemption doctrine.  When complete

3   preemption applies, claims—no matter how well-pleaded as state law claims—are not

4   recognized as state law claims.  They are from their inception federal claims.

5           There does exist . . . an "independent corollary" to the well-
            pleaded complaint rule, . . . known as the "complete pre-
6           emption doctrine."  On occasion, the Court has concluded that
            the pre-emptive force of a statute is so "extraordinary" that it
7           "converts an ordinary state common law complaint into one
            stating a federal claim for the purposes of the well-pleaded
8           complaint rule."

9   *Caterpillar,* 482 U.S. at 393 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65

10  (1987)).

11          When the complete preemption doctrine applies, the plaintiff is not the master of its

12  complaint.  It cannot choose a state forum by carefully crafting its complaint to avoid the

13  preemptive effect of federal law.  If governed by a federal law that completely occupies

14  the field, then the preempted claim is a matter of federal question jurisdiction and is

15  properly removed.  *Lyons v. Alaska Teamsters Employer Serv. Corp.*, 188 F.3d 1170,

16  1172 (9th Cir. 1999) ("The complete preemption doctrine applies when the class of claims

17  by plaintiff is so necessarily federal that removal is always permitted, even if the federal

18  issue is raised as a defense and does not appear on the face of plaintiff's well-pleaded

19  complaint.").

20          Plaintiff does not dispute (nor could it) that Section 301 of the Copyright Act of

21  1976 provides for complete preemption.  17 U.S.C. § 301; *see, e.g., Briarpatch Ltd., L.P.*

22  *v. Phoenix Pictures, Inc.*, 373 F.3d 296, 304-05 (2d Cir. 2004); *Rosciszewski v. Arete*

23  *Assocs., Inc.*, 1 F.3d 225, 228 (4th Cir. 1993); *Firoozye v. Earthlink Network*, 153 F.

24  Supp. 2d 1115, 1120, 1121-22 (N.D. Cal. 2001) (collecting cases holding that the

25  Copyright Act completely preempts state law); *Worth v. Universal Pictures, Inc.,* 5 F.

26  Supp. 2d 816, 821 (C.D. Cal. 1997) ("Complete preemption has been found for claims

27  brought under the Copyright Act."); *Dielsi v. Falk,* 916 F. Supp. 985, 993 (C.D. Cal.

28  1996) ("Although there is no Ninth Circuit authority on point, a common law claim

- 7 -

1   preempted by federal copyright law is clearly *completely* preempted under these

2   principles." (emphasis in original)).  Indeed, Plaintiff itself recently obtained an order of

3   dismissal of an unfair competition claim filed in another action pending in this Court on

4   the ground of field preemption by the Copyright Act.  Request for Judicial Notice Exs. D,

5   E.

6           Given this complete preemption, the "well-pleaded" complaint rule stands as no

7   bar to consideration of the other papers and pleadings filed in the case elaborating the

8   nature of Plaintiff's scantily pled claims.  *Firoozye*, 153 F. Supp. 2d at 1120.  Instead, this

9   Court is entitled to, and should, consider additional information made available after the

10  filing of the Complaint where it bears on Plaintiff's claims to determine whether the

11  Plaintiff has, in fact, "artfully pleaded" a complaint so as to avoid federal question

12  jurisdiction.  The Court should consider "background information in [the] petition for

13  removal and supporting affidavits . . . ."  *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766,

14  769 (9th Cir. 1986); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1489 (7th

15  Cir. 1996) ("[W]e are not limited by the complaint, but may look beyond it to assure

16  ourselves 'that the plaintiff has not by 'artful pleading' sought to defeat defendant's right

17  to a federal forum." (internal quote and citation omitted)).

18          Plaintiff's only cases cited for the contrary proposition are *Air Prods. & Chems,*

19  *Inc. v. Reichhold Chems, Inc.*, 755 F.2d 1559 (Fed. Cir. 1985), and *Chesler/Perlmutter*

20  *Prods., Inc. v. Fireworks Entmn't, Inc.*, 177 F. Supp. 2d 1050 (C.D. Cal. 2001).  These

21  two cases, to the extent relevant at all, support Defendants'' position.  In *Air Products,* the

22  court considered both the pleadings and the complaint.  755 F.2d at 1564.  In

23  *Chesler/Perlmutter Products*, the only reason the court did not consider papers outside of

24  the complaint was due to defendant's failure to provide them in their notice of removal.

25  177 F. Supp. 2d at 1058.

26          Indeed, courts are plainly entitled to rely on subsequent pleadings to establish the

27  existence of federal question jurisdiction because the removal statute expressly so

28  provides.  28 U.S.C. § 1446(b); *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 779 (9th

- 8 -

1   Cir. 1994) (allowing removal based on arguments raised in a reply brief filed in state court

2   in support of class certification because "[a]lthough the original complaint did not set

3   forth a removable claim, the reply brief did"); *see also ConnectU LLC v. Zuckerberg*, 522

4   F.3d 82, 95 (1st Cir. 2008).

5     Thus, while it may or may not have been apparent from Plaintiff's California

6   Judicial Council "form complaint" that Plaintiff was in fact pressing preempted claims,[3]

7   by the time it completed its motion for an injunction, that was obvious. By relying upon

8   declarations acknowledging that it was suing persons who were not parties to any

9   contract, and by urging in its briefs and at the hearing on the motion for an injunction a

10  standard for assessing liability equivalent to that of copyright law, Plaintiff clearly showed

11  its cards. Whatever prior attempt it made to be artful using its form complaint had failed,

12  and the basis for preemption became apparent. The statute and case law plainly require

13  consideration of such subsequent papers and events in the Superior Court action.

14    Given this, Plaintiff has no argument that it has pleaded only a breach of contract

15  action and a claim for unfair competition. Plaintiff has made clear that its action arises

16  because Defendants allegedly developed, publicly displayed (*i.e.*, "marketed"),

17  reproduced and distributed "similar" and "substantially similar" software and games to its

18  own. This Court is not required to turn a blind eye to those allegations; to the contrary, it

19  must consider them given the complete preemption of the Copyright Act.

20  **II. THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER THIS ACTION.**

21

22    **A. If Any Single Claim Of The Complaint Is Preempted By The Copyright Act, This Court Has Jurisdiction Over The Entire Action.**

23    A claim is preempted when (1) the "work involved . . . fall[s] within the 'subject

24  matter' of the Copyright Act" and (2) a plaintiff "asserts under state law . . . 'rights that

25  are equivalent' to those protected by the Copyright Act." *Kodadek v. MTV Networks,*

26  *Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998). In other words, if the work involved is one that

27  ---

 [3] Defendants filed the Notice of Removal within thirty days of service of the original Complaint, so even if preemption were apparent from that document, removal was timely. *See* Notice of Removal at 5.

28

- 9 -

*can* be protected by the Copyright Act, and a plaintiff is asserting a claim that charges the defendant with invading one of the statutory exclusive rights (reproduction, preparation of derivatives, public display or performance, or distribution) thereof, the claim is preempted. *Id.*

In assessing federal question jurisdiction under the complete preemption standard, the Court need not conclude that every claim asserted is preempted in order to deny the motion to remand. To the contrary, the Court need find that only a single claim against a single defendant is preempted. If one claim is preempted by copyright law, this Court must exercise jurisdiction over that claim. Supplemental jurisdiction exists as to the remainder. *Briarpatch Ltd., L.P.*, 373 F.3d at 308 ("Does the fact that some claims were within the court's copyright jurisdiction bring the other ones within its supplemental jurisdiction? As we have already suggested, the answer is yes."); *Worth*, 5 F. Supp. 2d at 823 (reaching same conclusion).

Thus, the question properly presented by the Motion is whether any single claim of the Complaint, as illuminated by Plaintiff's subsequent filings, is preempted, and the answer to that question is plainly "yes," as set out below. Accordingly, the motion to remand must be denied.

**B.     The Subject Matter Of This Action Falls Within The Copyright Act**

A work falls within the "subject matter of the Copyright Act" if is the type of work customarily protected by the Copyright Act. The "subject matter" analysis does not turn on the adjudication of the merits of the claim of infringement—namely, whether "functions and features" are or are not elements of protected expression. *See* Mot. at 9 (noting that "functions and features of software" are not protected by copyright). Instead, the question is whether the work is of the type that the copyright laws protect. This must be the question because the completely preemptive scope of the Copyright Act not only defines the scope of liability for infringement, but it also entitles defendants to the benefits of the ***limitations*** on copyright coverage—limitations such as the idea/expression dichotomy, merger doctrine, scenes a faire, fair use, first sale doctrine and the like.

- 10 -

1   Thus, apart from the scope of the coverage in assessing infringement, "the scope of

2   the Copyright Act's **subject matter** extends beyond the tangible expressions that can be

3   protected under the Act to elements of expression which themselves cannot be protected."

4   *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001) (emphasis added); *see*

5   *also National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848-50 (2d Cir. 1997)

6   (noting the same); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) (noting

7   the same); *Firoozye*, 153 F. Supp. 2d at 1124 (noting that the software "does not

8   necessarily have to be actually protected by a specific copyright or even itself be

9   copyrightable; it just has to be 'within the subject matter' of the Act").

10   It is beyond peradventure that software and videogames fall within the subject

11   matter of the Copyright Act. *See, e.g., Micro Star v. FormGen, Inc.*, 154 F.3d 1107 (9th

12   Cir. 1998); *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965 (9th Cir.

13   1992); *Johnson Controls v. Phoenix Control Sys., Inc.*, 886 F.2d 1173 (9th Cir. 1989);

14   *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204 (9th Cir. 1988). Indeed, Zynga has itself

15   taken precisely this position in successfully obtaining dismissal of unfair competition

16   claims brought against it by Psycho Monkey in Case No. 4:09-cv-0603-SBA, pending

17   before this Court. Request for Judicial Notice Exs. D, E.

18   Because Plaintiff agrees with this unassailable proposition, it tries to change the

19   subject. According to Plaintiff, while this case may be about videogames and software

20   generally, what Plaintiff is really seeking to do is complain only about matters that it

21   asserts are not protected by the copyright. Mot. at 5, 9-10. Never mind that the courts are

22   constantly struggling with the question of what non-literal elements may be subject to

23   copyright protection in any particular case. *See, e.g., Lotus v. Borland*, 49 F.3d 807 (1st

24   Cir. 1995), *aff'd by an equally divided court*, 516 U.S. 233 (1996). In assessing the first

25   prong of preemption, this is not the issue to be decided. Rather, the only question is

26   whether software and videogames fall within the protection of the Copyright Act, and the

27   correct answer to that question is plainly "yes."

28   Moreover, Plaintiff has **not** limited its unfair competition and contract claims solely

- 11 -

to arguably unprotected expression. Instead, Plaintiff has repeatedly indicated that its claims are intended to encompass intellectual property infringement in at least the form of the audiovisual aspects of the parties' respective works. In its injunction papers, Plaintiff insists that the "game characteristics are *nearly identical* to Zynga's Mafia Wars game." Notice of Removal Ex. E (Memo P&As In Support of Injunction) at 8. With regard to the Purchased Applications, Plaintiff's witnesses asserted that the actionable similarities included *how the games look*. *Id.* at 6-8 ("features" that "*show[s]*" leading participants, features that "*shows*" and "*lists*" items owned by a player, a "function" that is unlocked and that "*lists* the families with the most members" and a "function" that "*displays*" the actions taken by players); *see also* Notice of Removal Ex. G (Decl. of Kyle McEachern) at 4-6 ¶¶ 10-19; Notice of Removal Ex. X (Decl. of Scott Dale) at 3-4 ¶¶ 7-10. Then, at the injunction hearing, Plaintiff argued: "[i]f you look at the feature and function similarities between Mafia Wars and Mafia Live!, they are substantially similar, and they're substantially similar *not merely in what you would be out talking about in an intellectual property case . . . .*" Ex C. to Request for Judicial Notice at 20:7-9 (emphasis added).

By its own statement, Plaintiff is seeking relief that both includes and goes beyond what the Copyright Act encompasses. This is precisely what complete preemption is designed to address. Whether or not Plaintiff ultimately prevails on its claims, these are matters covered by the scope of the Copyright Act.

### C. Plaintiff Has Not Established An "Extra Element" That Would Defeat Preemption As To All Claims.

The second prong of the preemption inquiry—whether the rights upon which Plaintiff sues are equivalent to those of copyright—is determined under the "extra elements" test. Under this test, the Court must assess whether each claim—however it is labeled—seeks to enforce a right meaningfully different from the rights protected under the Copyright Act. If all that a claim seeks to do is to make a defendant answer for the reproduction, adaptation, distribution or public display of something that the Copyright

- 12 -

1    Act protects, then there is no extra element—whether the claim is labeled as one for

2    breach of contract or unfair competition. *Summit Mach. Tool Mfg. Corp. v. Victor CNC*

3    *Sys., Inc.*, 7 F.3d 1434, 1439-40 (9th Cir. 1993); *Wrench LLC*, 256 F.3d at 459; *Kabehie v.*

4    *Zoland*, 102 Cal. App. 4th 513, 525-28 (2002) (surveying case law).

5                    **1.    Plaintiff's Unfair Competition Claim Is Preempted.**

6           A statutory unfair competition claim is preempted when it seeks to recover for the

7    reproduction or distribution of materials that fall within the scope of the Copyright Act.

8    *Kodadek*, 152 F.3d at 1212-13.  And, this is all that Plaintiff's unfair competition claim

9    seeks to do.  The Section 17200 claim seeks to enjoin the reproduction, display and

10   distribution of a videogame because it is "similar" and "substantially similar" (in the

11   parlance of the Year Two restriction) to Plaintiff's videogame.  This tort theory is

12   substantively identical to a claim for copyright infringement.

13          Plaintiff's only rejoinder to this argument is that the unfair competition claim is

14   premised upon a contract, so the extra element is present.  Mot. at 11-12.  This *ipse dixit*

15   will not save the claim from preemption.  First, as detailed in the Statement of Facts,

16   *supra*, Defendant Aftershock *is not a party to any of the contracts*.  Aftershock is a

17   separate entity that was formed long after the parties entered into the contract at issue in

18   the complaint.  Indeed, Plaintiff did not allege that Aftershock LLC was a party to the

19   contracts in its complaint, admitted in its declarations that Aftershock has is separate legal

20   entity from CLZ, and also has admitted that it intends its complaint to encompass that

21   separate legal entity as a Defendant.  *See* Notice of Removal Ex. G (Decl. of Kyle

22   McEachern) at 3 ¶ 7 (noting that Chen and Zhang "departed from Zynga [and] formed

23   another company call [sic] Aftershock Innovations LLC"); Notice of Removal Ex. H

24   (Decl. of Andrew Trader) at 6 ¶ 23 (noting that Aftershock "was registered with the

25   California Secretary of State . . . after Mr. Chen and Mr. Zhang's departure from Zynga");

26   RJN Exs. A, B; Hurst Decl. ¶ 2.

27          Therefore, the only claim that stands against Aftershock is that it has distributed

28   videogames that are "similar," "substantially similar," or in Plaintiff's words "nearly

                                              - 13 -

identical" to those owned by Plaintiff.  Ownership and "substantial similarity" are *the two touchstones—the prima facie case--of copyright infringement*.  Or, in the case of certain works with a "thin" copyright, "virtual identity" (in Plaintiff's parlance here, "nearly identical") is the test for infringement.  *Walker v. University Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979).  Pleading a claim based upon copyrighted subject matter that uses the touchstone of copyright infringement to assess liability cannot be anything other than a claim equivalent to that of copyright.  Such a claim is preempted and is properly before this Court.  *Kodadek*, 152 F.3d at 1212-13; *Summit Mach. Tool Mfg. Corp.*, 7 F.3d at 1442 ("To extent [plaintiff] may complain that [defendant] has 'pirated' its lathe by employing a particularly unfair method of copying such a claim is preempted by federal law.").

Nor do the contracts exempt the unfair competition claim against the remaining Defendants from the scope of Copyright Act preemption.  This is because the measure of unfair or unlawful behavior sufficient to sustain an unfair competition claim cannot be premised upon the mere breach of a contractual obligation.  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008).  Thus, to the extent Plaintiff claims unlawful behavior premised upon the creation, marketing and distribution of a videogame "similar" and "substantially similar" to its own, it is plain that Plaintiff is using its theory of breach as a back-door effort to make a federal copyright claim under Section 17200.  This it cannot do.  Plaintiff cannot rest a Section 17200 claim against the remaining Defendants upon a disguised contract theory that uses the substantively identical elements to copyright infringement and avoid preemption.  *Kodadek*, 152 F.3d at 1212-13.[4]

In short, Plaintiff's unfair competition claim rests upon the allegation that Defendants distributed "substantially similar" or "nearly identical" videogames.  This claim is plainly preempted.

---

[4] *Firoozye*, cited by Plaintiff (Mot. at. 11-12), does not hold otherwise.  Rather, it found that "plaintiff's unfair competition claim is not preempted to the extent it is based on the *misrepresentation and misappropriation of trade secret claims*."  153 F. Supp. 2d at 1131 (emphasis added).

- 14 -

1   **2.   Plaintiff's Claim For Breach Of The Year Two Restriction Also
          Is Preempted.**

2

3       While courts often have found that contract claims can provide the "extra element"

4   necessary to avoid preemption (*see Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th

5   Cir. 2005); *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004) (finding

6   implied promise to pay the extra element)), the mere fact of a contractual obligation by

7   itself is insufficient to demonstrate the extra element—instead, the nature of the

8   contractual obligation must still be examined. *See* 1-1 Melvin B. Nimmer and David

9   Nimmer, Nimmer on Copyright § 1.01[A][1][a] (2009) (noting that a categorical approach

10  is not the appropriate method and disagreeing with courts that have suggested otherwise).

11  For example, *ProCD* explicitly did not find that all contract claims are preempted. It

12  "refrain[ed] from adopting a rule that anything with the label 'contract' is necessarily

13  outside the preemption clause . . . ." 86 F.3d at 1455. Similarly, *National Car Rental*

14  *Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426 (8th Cir. 1993), did not adopt a

15  categorical rule. Rather, it determined that the contract was premised on use of the

16  program to process data and not on an "allegation of the actual distribution of a copy . . .

17  ." *Id.* at 430; *see also* Nimmer on Copyright, *supra* (noting that courts that have been

18  thought to adopt a categorical approach were actually deciding the case on the facts

19  presented).[5]

20      Instead, the majority of courts recognize that there are instances when a contract

21  claim seeks to protect rights provided under the Copyright Act. *See Kabehie*, 102 Cal.

22  App. 4th at 525-28 (collecting cases and rejecting a categorical approach). "If the promise

23  amounts only to a promise to refrain from reproducing, performing, distributing or

24  displaying the work, then the contract claim is preempted." *Wrench LLC*, 256 F.3d at

25  _____

26  [5] Courts that have adopted the categorical approach often cite to those that have explicitly rejected
    a categorical approach. For example, the court in *Bowers v. Baystate Techs. Inc.*, 320 F.3d 1317

27  (Fed. Cir. 2003), on which Plaintiff relies (Mot. at 10), purports to follow the majority rule when
    it found that contract claims were not preempted. In support, the court cited cases like *Wrench*

28  *LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001), which as did not adopt a categorical
    approach.

457-58; *see also Chesler/Perlmutter*, 177 F. Supp. 2d at 1058 (cited by Plaintiff) (noting that "the preemption analysis requires a 'fact-specific approach'" which requires analysis of the specific promises made). Or, when "the very promise is so inextricably entwined with the copyright that to permit the promisee to sue upon it would undermine the preemption feature of the Copyright Act," the contract claim is preempted. *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1060 (C.D. Cal. 2000).

Applying that approach here, the "Year Two" restriction seeks to enforce rights encompassed by the Copyright Act. Indeed, that provision borrows the legal standard for its measure of contractual obligation the precise terminology that is used to define copyright infringement claims: "substantial similar[ity]." Even Plaintiff is forced to admit that this "is indeed a term of art in the copyright world." Mot. at 9. Under the terms of the "Year Two" restriction, Defendants are barred from "developing" (i.e., reproducing under Section 106), "marketing" (i.e., publicly displaying under Section 106) or "distributing"—the same term as used in Section 106) applications for the Facebook platform or other social-networking platforms that have functions and/or features *substantially similar* to those developed, marketed or distributed" by Plaintiff. Notice of Removal Ex. A at 4; Exs. B, C, D to Notice of Removal Ex. H (Decl. of Andrew Trader).

Plaintiff suggests that the use of the phrase "features and functions" in the agreements means that the agreements only cover elements not protected by the Copyright Act, and therefore the copyright laws are not implicated. Mot.. 9 ("No amount of similarity of *unprotectable* content . . . can give rise to a copyright claim.). When the Court looks to the ordinary meaning of the language of this contract, however, it must conclude otherwise. The meaning of the word "feature," used in the contract to define one aspect of the promise, compels the conclusion that copyrightable subject matter is included within the scope of the purported promise. "Feature" means "[t]he make-up, shape, proportions, form, or outward appearance, esp. of a person. . . . A prominent aspect, quality or characteristic . . . ." Websters II New College Dictionary 410 (Houghton Mifflin 2001). A similarity of feature must therefore be measured with respect

- 16 -

to *appearance*, and the appearance of a videogame—its audiovisual display—is indeed the *core* of what is protected by the Copyright Act.  The Year Two restriction thus posits at least in part a restriction on the reproduction, public display and distribution of substantially similar audiovisual elements of Plaintiff's works.  If this is not a copyright claim, it is hard to imagine what would be.

Moreover, the question whether or not elements of a copyrightable work are protected by the Copyright Act or are "ideas, content not original to the copyright claimant, *scenes a faire*, or *functional* aspects or features of videogames," (Mot. at 9), is a question that can only be answered by resort to copyright laws—a federal question. *Sinicola v. Warner Bros., Inc.*, 948 F. Supp. 1176, 1190 (E.D.N.Y. 1996), cited by Plaintiff, (Mot. at 9), underscores this point.  The court in that case ultimately found that the works were not protected by copyright, but clearly, in reaching this conclusion, it exercised jurisdiction over the matter.

Finally, a contractual standard of substantial similarity of functions and features is quite difficult to distinguish in meaning from the "total concept and feel" prong of the Ninth Circuit's analytic dissection test for assessing copyright infringement.  *See generally Sid & Marty Krofft Tel. Prods. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977).  The "total concept and feel" test has been applied in videogame cases in the course of the infringement inquiry.  *Atari, Inc. v. North Am. Philips Consumer Elec. Corp.*, 672 F.2d 607 (7th Cir. 1982); *Atari, Inc. v. Amusement World, Inc.*, 547 F. Supp. 222 (D. Md. 1981).  And it has been applied to assess infringement of the display of other types of software as well.  *Broderbund Software v. Unison World, Inc.*, 648 F. Supp. 1127 (N.D. Cal. 1986).  While satisfaction of this test alone would plainly be insufficient to sustain a finding of infringement in the software context, *see Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir. 1994), nonetheless it is apparent that the contractual standard in these Agreements and the copyright infringement standard have much in common.

In short, the "Year Two" restriction of this contract, by its terms, encompasses

- 17 -

subject matter (videogame features), activities (development, marketing and distribution) and a legal standard (substantial similarity) that are at the core of the Copyright Act inquiry.  The "Year Two" contract claims are therefore preempted.  *See also Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953 (N.D. Ill. 2002).[6]

## CONCLUSION

For these reasons, Plaintiff's motion to remand plainly should be denied.

Dated:  May 14, 2009

ANNETTE L. HURST
MICHAEL D. WEIL
CHRISTIAN N. BROWN
ORRICK, HERRINGTON & SUTCLIFFE
LLP

By:_____*/s/ Annette L. Hurst*_____
        Annette L. Hurst

Attorneys for Defendants
Aftershock Innovations LLC (erroneously named as CLZ Concepts LLC d/b/a Aftershock Innovations LLC), Jeff Chen and James Zhang

---

[6] Apparently anticipating that Defendants might argue that the contractual non-compete obligations are unenforceable under California law, Plaintiff argues that they are enforceable and therefore capable of supplying the "extra element" under Section 16600 of the California Business and Professions Code.  Mot. at 11.  While Defendants certainly do view the contracts, especially the Year Two restriction, as unenforceable, Defendants do not believe that the motion to remand is the proper place to litigate this issue.  Accordingly, Defendants have assumed for purposes of opposing the motion to remand that the contracts embody enforceable promises. Section 16600 is otherwise irrelevant.  Indeed, it is clear that even state statutes which are the equivalent of copyright protection are preempted under Section 301.  *See, e.g., Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 228 (4th Cir. 1993)

- 18 -

1

## **DECLARATION OF ANNETTE HURST**

2          I, Annette Hurst, declare as follows:

3          1. I am a partner at Orrick, Herrington & Sutcliffe counsel for all Defendants to

4    this action.  I am a duly admitted member of the State Bar of California, and I am

5    admitted to practice before this Court.  I have personal knowledge of the facts set forth in

6    this declaration, and if called as a witness, I could and would testify as follows.

7          2. After Plaintiff filed its complaint, I spoke to Jennifer Kelly, counsel for Plaintiff,

8    about the status of Aftershock Innovations, Inc. (named in the complaint as Aftershock

9    Innovations LLC).  I explained that Aftershock was not a d/b/a of CLZ Concepts.  I

10   explained that Aftershock was first registered as an limited liability corporation with the

11   California Secretary of State and then converted to its present status as a Delaware

12   corporation.  Ms. Kelly told me that it was Plaintiff's intention at the time of the filing of

13   the complaint that Aftershock, whatever its form, be a defendant and party to this lawsuit.

14   She further explained that, at the time of the filing of the complaint, Plaintiff was

15   uncertain as to its status and, therefore, named it as a d/b/a of CLZ Concepts.  Attached as

16   Exhibit A is a true and correct copy of my e-mail to Ms. Kelly confirming our discussion.

17         I declare under penalty of perjury under the laws of the United States that the

18   foregoing is true and correct.  Executed at San Francisco, California on May 14, 2009.

19

20                              ___*/s/ Annette L. Hurst*_____
                                Annette Hurst

21

22

23

24

25

26

27

28

# EXHIBIT A

## Parker, Warrington

| | |
|---|---|
| **From:** | Hurst, Annette |
| **Sent:** | Thursday, May 07, 2009 4:23 PM |
| **To:** | Jennifer Kelly |
| **Cc:** | Weil, Michael |
| **Subject:** | Zynga v. Aftershock et al. |

Jennifer:

Per our earlier discussion, at the time the lawsuit was filed, Aftershock was a California LLC and was later converted to its present status, as a Delaware corporation. The complaint currently names Aftershock as a dba of CLZ, but it has never been such. We understand that it is Zynga's intention that the Complaint in the action encompass Aftershock as a separate entity.

Sincerely,
Annette Hurst



ORRICK

**ANNETTE L. HURST**
*Partner*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
SAN FRANCISCO
*tel* (415) 773-4585
*fax* (415) 773-5759
ahurst@orrick.com

www.orrick.com