JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
JENNIFER L. KELLY (CSB No. 193416)
jkelly@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:   (415) 875-2300
Facsimile:    (415) 281-1350

HENRY Z. CARBAJAL III (CSB No. 237951)
hcarbajal@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:   (650) 988-8500
Facsimile:    (650) 938-5200

Attorneys for Plaintiff
ZYNGA GAME NETWORK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ZYNGA GAME NETWORK, INC., a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>CLZ CONCEPTS D/B/A AFTERSHOCK INNOVATIONS LLC, JEFF CHEN and JAMES ZHANG,<br><br>Defendants. | Case No. 3:09-cv-00854 VRW<br><br>**PLAINTIFF ZYNGA GAME NETWORK, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**<br><br>Date:         June 4, 2009<br>Time:        2:30 p.m.<br>Courtroom: 6, 17th Floor<br>Judge:       Hon. Vaughn R. Walker |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

    I.    DEFENDANTS MISCONSTRUE THE WELL-PLEADED COMPLAINT RULE .................................................................................................................... 2

    II.   ZYNGA'S CLAIM FOR BREACH OF A NON-COMPETE AGREEMENT IS NOT PREEMPTED ................................................................ 3

        A.    Defendants Concede that any Claim Based on Breach of Their Year One Restrictions is not Preempted ............................................. 3

        B.    Ninth Circuit Law Holds that Breach of Contract Claims are not Preempted ............................................................................................ 4

        C.    Zynga's Contract Claim is Replete with Extra Elements that Distinguish it from a Copyright Claim ......................................................... 6

            1.    Extra Elements Provided by California Business and Professions Code § 16601 .................................................................. 6

            2.    Extra Elements Provided in the Non-Competition Provisions ........ 7

        D.    Defendants' Averments Regarding Aftershock Innovations are Irrelevant ................................................................................................. 9

    III.  ZYNGA'S CLAIM FOR UNFAIR COMPETITION IS NOT PREEMPTED ............................................................................................................. 10

CONCLUSION ......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altera Corp. v. Clear Logic, Inc.*,
   424 F.3d 1079 (9th Cir. 2005) .................................................................................................. 4

*Bright v. Bechtel Petroleum, Inc.*,
   780 F.2d 766 (9th Cir. 1986) .................................................................................................... 2

*Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't, Inc.*,
   177 F. Supp. 2d 1050 (C.D. Cal. 2001) ............................................................................ 2, 5, 8

*Connect U LLC v. Zuckerberg*,
   522 F.3d 82 (1st Cir. 2008) ....................................................................................................... 2

*Craigslist, Inc. v. Autoposterpro, Inc.*,
   No. CV 08 05069, 2009 U.S. Dist. LEXIS 31587 (N.D. Cal. Mar. 31, 2009) ......................... 6

*Doran v. Vicorp Restaurants, Inc.*,
   407 F. Supp. 2d 1115 (C.D. Cal. 2005) .................................................................................... 2

*Gaus v. Miles, Inc.*,
   980 F.2d 564 (9th Cir. 1992) .................................................................................................... 4

*Grosso v. Miramax Film Corp.*,
   383 F.3d 965 (9th Cir. 2004) .................................................................................................... 4

*Kabehie v. Zoland*,
   102 Cal. App. 4th 513 (2002) ................................................................................................... 5

*Kaplan v. Nalpak Corp.*,
   158 Cal. App. 2d 197 (1958) .................................................................................................... 7

*Monogram Indus., Inc. v. Sar Indus., Inc.*,
   64 Cal. App. 3d 692 (1976) ........................................................................................... 7, 8, 11

*ProCD, Inc. v. Zeidenberg*,
   86 F.3d 1447 (7th Cir. 1996) .................................................................................................... 5

*Selby v. New Line Cinema Corp.*,
   96 F. Supp. 2d 1053 (C.D. Cal. 2000) ...................................................................................... 5

*Strategix, Ltd. v. Infocrossing West, Inc.*,
   142 Cal. App. 4th 1068 (2006) ............................................................................................ 6, 11

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ................................................................................................ 10

*Taquino v. Teledyne Monarch Rubber*,
   893 F.2d 1488 (5th Cir. 1990) .................................................................................................. 6

*Wrench LLC v. Taco Bell Corp.*,
   256 F.3d 446 (6th Cir. 2001) .................................................................................................... 5

**STATUTES**

28 U.S.C. § 1441 ............................................................................................................................ 4

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

## OTHER AUTHORITIES

1 Nimmer on Copyright § 1.01 (2009) .................................................................................... 5
California Business and Professions Code § 16601 ............................................... 2, 6, 7, 11
California Business and Professions Code § 17200 ................................................................ 10
Restatement 2d (Contracts) § 188 ............................................................................................ 11

# INTRODUCTION

No matter how badly Defendants want it to be, this is not a copyright case. It is an action for breach of a contractual promise not to compete—an area that federal law does not even touch, much less completely occupy. Thus, notwithstanding Defendants' attempt to obscure the issue, federal jurisdiction simply is not present.

As Zynga has explained, in exchange for the sale of substantially all the assets of their competing business (for which they received over a million dollars cash, substantial equity in Zynga and lucrative positions with the company), Defendants CLZ Concepts, Jeff Chen and James Zhang entered into agreements with Zynga under which they covenanted that they would not engage in a competing business for two years. In blatant violation of these covenants, less than one year later Chen and Zhang left Zynga, reformulated CLZ Concepts, and started a directly competitive venture called Aftershock Innovations LLC. Zynga responded by filing an action in state court for injunctive relief only, seeking an order requiring Defendants to abide by their non-compete obligations for the remainder of their duration. This set of facts has absolutely nothing to do with any parties' copyrights.

Not surprisingly, Defendants have offered a convoluted set of arguments in an attempt to justify their wholly improper removal of this case. In essence, they argue that an entity purchasing a business that makes copyrightable products can *never* enforce an otherwise valid non-compete agreement without running afoul of Section 301 of the Copyright Act. That is not the law. To the contrary, preemption of claims based on breach of a contractual promise is rare— and *never* occurs where, as here, the claim contains an "extra element" that renders it qualitatively different from a copyright claim, as Zynga's plainly does. Defendants therefore cannot meet their burden of proof as to removal jurisdiction. Zynga's motion to remand should be granted, along with its request for its costs and attorneys' fees in opposing the removal.

/ / /

/ / /

/ / /

# ARGUMENT

## I. DEFENDANTS MISCONSTRUE THE WELL-PLEADED COMPLAINT RULE

It is undisputed that Zynga's complaint discloses no copyright claim or defense. Doc. # 1, Notice of Removal, at 2. The complaint explicitly describes the essential terms of the parties' agreements, including the parallel first and second year competitive restrictions on Defendants conduct set forth in both agreements (referred to herein as the "Year One" and "Year Two" restrictions).[1] Doc. # 1-2, Notice of Removal, Ex. A (Complaint), at 4. Thus, although a court may consider the petition for removal when necessary to "clarify the action presented in the complaint" in an alleged case of artful pleading, *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 769 & n.3 (9th Cir. 1986), there is no such need here. Zynga has fully disclosed the basis for its claims in its complaint. Moreover, as explained in Section II.B.-C., *infra*, the nature of Defendants' promises, controlling Ninth Circuit precedent, and California Business and Professions Code Section 16601 all unequivocally counsel that Zynga's breach of contract and associated unfair competition claims both contain the "extra element" that renders them qualitatively different from a copyright claim. No subsequent pleading can change this inescapable conclusion. Thus, in this case there is no need to look anywhere but the complaint to determine that removal jurisdiction is not present. *See Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't, Inc.*, 177 F. Supp. 2d 1050, 1058 (C.D. Cal. 2001) (considering only the complaint in rejecting preemption of claims for breach of an express contract, where contractual promises went beyond promises not to accept the benefit of a copyrighted work).[2] But in all

---

[1] Although Defendants assail Zynga for its use of a California Judicial Council Form to draft its complaint, there is nothing improper about use of the forms and Defendants do not assert that the complaint runs afoul of California law or Federal Rule of Civil Procedure 8. *See Doran v. Vicorp Restaurants, Inc.*, 407 F. Supp. 2d 1115, 1119 n.5 (C.D. Cal. 2005).

[2] Defendants overstate the scope of the "artful pleading" justification for referring to post-complaint filings to support removal. *Connect U LLC v. Zuckerberg*, 522 F.3d 82, 95 (1st Cir. 2008) is inapposite, as it involved the court's consideration of an amended complaint filed by a plaintiff as a matter of right that happened to cure alleged jurisdictional deficiencies. *Id*. at 86-87. Defendants also appear to contend that the complete preemption doctrine allows for unfettered evaluation of all post-complaint pleadings. Even assuming the Ninth Circuit applies the complete preemption doctrine to the Copyright Act, which is not clear, "[t]he fact that copyright preemption analysis requires a claim-by-claim inquiry . . . indicates that the Copyright Act's complete preemptive force is somewhat narrow." *Chesler/Perlmutter Prods., Inc.*, 177 F. Supp. 2d at 1057 (citation omitted).

events, as discussed below, even if the Court were to consider Zynga's subsequent submissions to the Court, there is no basis for removal here.

## II. ZYNGA'S CLAIM FOR BREACH OF A NON-COMPETE AGREEMENT IS NOT PREEMPTED

### A. Defendants Concede that any Claim Based on Breach of Their Year One Restrictions is not Preempted

As a threshold matter, it is undisputed that to the extent Zynga's claims are based on breach of Defendants' Year One non-compete obligations, they are not preempted. Under the parties' Asset Purchase Agreement, Defendants were restricted for two years from "directly or indirectly . . . engag[ing] in a Competing Business, . . . enter[ing] the employ of or render[ing] any services to or for, any Person that is engaged in a Competing Business, and . . . becom[ing] interested in any such Person[.]" Doc. # 1-3, Notice of Removal, Ex. H. (Decl. of Andrew Trader), Decl. Ex. B, at 18. Under the Asset Purchase Agreement, a "Competing Business" is defined as:

> (i) for purposes of the first year immediately following the Closing Date, ***any business consisting of any of the following***: (A) the development, marketing or distribution of applications for the Facebook platform or other social networking platforms or (B) the development, marketing or distribution of software applications that have functions and/or features similar to those of the Purchased Applications; and (ii) for purposes of the second year immediately following the Closing Date, the development, marketing or distribution of applications for the Facebook platform or other social-networking platforms that have functions and/or features substantially similar to those developed, marketed or distributed by the Purchaser or otherwise available on the Purchaser's network.

*Id*. at 18-19 (emphasis added).

Similarly, Defendant Chen and Zhang's respective employment agreements restrict them from "participat[ing] or engag[ing] in the design, development, manufacture, production, marketing, sale or servicing of any product of, or otherwise engag[ing] in the provision of any services to, any person or entity that ***engages in a business*** that is Directly Competitive . . . or . . . permit[ting] Employee's name to be used in connection with a ***business*** that is Directly Competitive." Doc. # 1-3, Notice of Removal, Ex. H. (Decl. of Andrew Trader), Decl. Ex. C, at 11 & Ex. D, at 11 (emphasis added). Under the employment agreements, "Directly Competitive" is defined as:

>for purposes of the first year of the Restrictive Period, (1) developing, marketing or distributing software applications that have functions and/or features similar to those of the Purchased Applications or (2) developing, marketing or distributing applications for the Facebook platform or other social-networking platforms; and (B) for purposes of the second year of the Restrictive Period, developing, marketing or distributing applications for the Facebook platform or other social-networking platforms that have functions and/or features substantially similar to those developed, marketed or distributed by the Company or otherwise available on the Company's network.

*Id*.

Defendants have not argued (and could not argue) that Zynga's claims based on their alleged breach of the Year One restrictions are preempted. *See* Doc. # 14 (Def.'s Opp. to Mot. for Remand), at 15, 18 & 21-23. The only remaining issue, therefore, is whether their breach of the Year Two restrictions is preempted by the Copyright Act.[3] If not, Zynga's breach of contract claim, and the unfair competition claim that depends on it, must be remanded to state court.

Thus, Defendants' removal argument hangs by an extremely thin reed. Moreover, it bears repeating that the removal statute, 28 U.S.C. § 1441, is narrowly construed, with all doubts about the propriety of federal jurisdiction resolved against removal. *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992) ("[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance"). Defendants do not dispute that they bear the burden of proving that the Court has subject matter jurisdiction over this action. *Gaus*, 980 F.2d at 566-67.

**B.    Ninth Circuit Law Holds that Breach of Contract Claims are not Preempted**

Defendants, tellingly, rely solely on non-binding authority for their argument that a contract claim does not necessarily contain the "extra element" necessary to avoid preemption. In so doing, they virtually ignore the controlling Ninth Circuit authority cited by Zynga which holds that a contract claim *does* contain an extra element—even where the alleged breach pertains to use of copyrightable subject matter. *Grosso v. Miramax Film Corp*., 383 F.3d 965, 968 (9th Cir. 2004) (promise to pay for movie script was "extra element"); *see also Altera Corp. v. Clear Logic, Inc.,* 424 F.3d 1079, 1089 (9th Cir. 2005) ("Most courts have held that the Copyright Act

---

[3]    Defendants also proffer a spurious argument that, assuming Aftershock Innovations is not a party to the contracts, Zynga's unfair competition claim is preempted. This argument is easily refuted *infra*.

does *not* preempt the enforcement of contractual rights. . . . We find the logic of these cases persuasive here.") (emphasis in original).[4] This, frankly, is the end of the matter.

But even assuming, for the sake of argument, the nature of the contractual promise could make a difference, Defendants' preemption argument would still fail.[5] The cases Defendants rely on merely note that claims involving sham contracts, *see ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996), or contractual promises that are wholly duplicative of exclusive rights under the Copyright Act, see *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001), lack this extra element. Neither situation is present here.

Defendants also mischaracterize the supposed absence of a "categorical" approach to breach of contract claims allegedly endorsed by the Nimmer on Copyright treatise and the other non-binding authorities on which they hang their hats. As Nimmer has observed:

> [A]t times a breach of contract cause of action can serve as a subterfuge to control nothing other than the reproduction, adaptation, public distribution, etc. of works within the subject matter of copyright.
>
> \*\*\*
>
> Although the vast majority of contract claims will presumably survive scrutiny . . . nonetheless pre-emption should continue to strike down claims that, though denominated 'contract,' nonetheless complain directly about the reproduction of expressive materials.

1 Nimmer on Copyright § 1.01[B][1][a][[iii] (2009) (footnotes omitted). *Kabehie v. Zoland*, 102 Cal. App. 4th 513, 526 (2002), simply agrees with the treatise's proposition. *Id*. ("If the promise was simply to refrain from copying the material or infringing the rights protected by copyright, then the promisor has promised nothing more than that which was already required under federal copyright law.").[6]

As shown in Zynga's opening papers and below, the promises at issue here go well beyond the rights granted by the Copyright Act and therefore would not be preempted, even

---

[4] Defendants make no attempt to distinguish these cases.

[5] Defendants overstate the supposed "fact-specific" analysis mentioned by *Chesler/Perlmutter Prods., Inc.*, 177 F. Supp. 2d at 1058. The examination of the contract there amounted to little more than an observation that specific promises were made in a written contract, such as the promise to pay, that went beyond "' a promise not to accept the benefit of a copyrighted work.'" *Id*. at 1059 (citation omitted). The contracts at issue here go well beyond such a promise.

[6] Defendants' citation to *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1060 (C.D. Cal. 2000) mirrors the proposition in the Nimmer treatise and the *Kabehie* case. The hypothetical "inextricably entwined" promise mentioned in *Selby* is the mere promise not to infringe the "copyright or copyright protection" of the other party. *Id*.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   absent controlling Ninth Circuit authority. *See Craigslist, Inc. v. Autoposterpro, Inc.*, No. CV 08
2   05069, 2009 U.S. Dist. LEXIS 31587, at *4-6 (N.D. Cal. Mar. 31, 2009) (finding contract-based
3   claims not preempted where breach of contract claim was predicated on contract containing
4   "extra obligations beyond those imposed by the Copyright Act"). Thus, an approach involving
5   closer examination of the contractual promises provides no assistance to Defendants.

6       Finally, perhaps most telling of all, Defendants have absolutely nothing to say about
7   *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990), which affirmed a
8   district court's conclusion that a contract claim based on violation of a non-compete was not
9   preempted, *even where breaches included use of copyrighted materials*. *Id*. Defendants have not
10  cited (and Zynga is not aware of) any authority holding to the contrary.

### C. Zynga's Contract Claim is Replete with Extra Elements that Distinguish it from a Copyright Claim

13      Aside from the existence of a contract containing the inherent extra element of a
14  contractual promise—which is dispositive in this Circuit—the contracts at issue here necessarily
15  contain several extra elements that render claims based on their breach qualitatively different
16  from a copyright claim.

#### 1. Extra Elements Provided by California Business and Professions Code § 16601

19      Under California law, contracts restricting lawful business activity or employment
20  mobility are generally unenforceable, subject to certain exceptions. One of these exceptions is a
21  promise not to compete given by a seller in connection with the sale of all or substantially all the
22  assets of his business. Cal. Bus. & Prof. Code § 16601.

23      Given California's strong public policy against limitations on competition, Section 16601
24  contains several requirements that must be met for such a promise to be enforceable, which in
25  turn, add necessary elements to a cause of action for breach of that promise. For example, there
26  must have been a sale of the goodwill of a business to the promisee of the covenant. Cal. Bus. &
27  Prof. Code § 16601; *see also Strategix, Ltd. v. Infocrossing West, Inc.*, 142 Cal. App. 4th 1068,
28  1072 (2006). ("[s]ection 16601's exception serves an important commercial purpose by

protecting the value of the business acquired by the buyer."). Thus, the sale of goodwill, as indisputably occurred in the sale of substantially all the assets of CLZ Concepts to Zynga, is an essential element unrelated to copyright law.

Additional elements include a requirement that the promise not to compete only restrict the seller from carrying on a business "similar" to the one sold, and that the restriction be reasonable in scope—points Defendants repeatedly emphasized when arguing (unsuccessfully) that the noncompete provisions here were too broad. Doc. # 15-4 (Def.'s Request for Judicial Notice, Ex. C), at 51:17-26 & 52:20-53:20; *see also* Cal. Bus. & Prof. Code § 16601; *Monogram Indus., Inc. v. Sar Indus., Inc.*, 64 Cal. App. 3d 692, 698 (1976); *Kaplan v. Nalpak Corp.,* 158 Cal. App. 2d 197, 200 (1958). These additional extra elements are also qualitatively different from the exclusive rights under copyright.

### 2. Extra Elements Provided in the Non-Competition Provisions

The terms of the contracts themselves add still more "extra elements" that prevent preemption. Throughout their opposition papers, Defendants take the Year Two restrictions out of context in asserting that Zynga complains about their copying and distribution of substantially similar video games. Doc. # 14 (Def.'s Opp. to Mot. for Remand), at 7, 10, 14, 17, 18, 19, 21, 22 & 23. Defendants focus on a single element of the Year Two restrictions comprising applications "that have functions and/or features substantially similar to those developed, marketed or distributed" by Zynga. Doc. # 1-3, Notice of Removal, Ex. H. (Decl. of Andrew Trader), Decl. Ex. B, at 19, Decl. Ex. C, at 11 & Ex. D, at 11. Yet Defendants omit reference to the second element of the Year Two restrictions—that the applications must also be for social networking platforms. *Id*. This too is an additional element unrelated to copyright law, which restricts copying of protected expression, not selling products with particular functions for particular platforms.

Defendants' selective quotation from the February 20, 2009 state court hearing transcript is similarly inapt. Out of a 63-page transcript, they cite only half of a sentence as alleged proof that Zynga "elaborated substantially upon the nature of its claims." Defendants had argued in state court that the iPhone platform was not a social networking platform within the meaning of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   the parties' contracts. *See* Doc. # 15-4 (Def.'s Request for Judicial Notice, Ex. C), at 19:2-28. In

2   arguing that the iPhone *is* a social networking platform, Zynga argued:

3   > The fact that CLZ or the individual defendants currently going by the name Aftershock
>   have come out with an application that is a direct competitor for the leading -- a leading
4   > social game for the Facebook application ***underscores the social networking aspect of the
>   iPhone and how it's used***.

5

6   > If you look at the feature and function similarities between Mafia Wars and Mafia LIVE!,
>   they are substantially similar, and they're substantially similar not merely in what you
>   would be out talking about in an intellectual property case, ***but with respect to features
7   > and functions that exploit the social network*** . . .

8   *Id*. at 20:1-11 (emphasis added). No mention is made in the cited argument or anywhere else in

9   the hearing transcript of a copyright or similar claim being made against Defendants. Quite the

10  opposite—Zynga's argument was that the similarities were *not* the type that would be at issue in

11  an intellectual property case, but rather were significant in that they related to whether the

12  applications were sold for social networking platforms.

13        Moreover, even if the "social networking platform" element were absent from the Year

14  Two restrictions, Zynga's claims would not be preempted.[7] Nothing in the terminology of

15  "features" or "functions" necessarily implicates copyrights. To the contrary, in its opening

16  papers, Zynga cited myriad cases holding that video game features and functions are *outside* the

17  purview of copyright protection. Doc # 6 (Pl.'s Mot. to Remand), at 13. Defendants utterly fail

18  to address these cases. Instead, they devote their efforts to trying to convince this Court that these

19  words may possibly encompass *some* aspect of their product that *may* be copyrightable.

20  Unfortunately for Defendants, this merely underscores their failure to grasp the nature of the

21  preemption doctrine. As the Central District recognized in *Chesler/Perlmutter*, on which

22  Defendants themselves rely, "state law claims are not preempted simply because they fall within

23  the subject matter of copyright." *Chesler/Perlmutter*, 177 F. Supp. 2d at 1057 (further noting

24  preemption exists only "if the rights asserted in the state law claims are rights that could have

25
---
26  [7] As Zynga explained in its opening papers, the parties agreed to define a field of competition
between them by referring to the products' functions—not their "look and feel," but *what the
27  products do*. In fact, it is difficult to conceive of a better way to define competition among
software companies, or indeed any companies, than by reference to their products and/or what
28  they do. *See Monogram Indus., Inc.*, 64 Cal. App. 3d at 700 (discussing similarities in toilets in
concluding that defendants were "engaged in a business 'similar' to or 'like'" that of Plaintiff).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PL.'S REPLY MPA ISO MOTION TO REMAND     - 8 -     CASE NO. 3:09-cv-00854 VRW

1 been asserted under the Copyright Act").

2 In sum, the crux of the Year Two restrictions is not Defendants' isolated instances of circulating "similar" games. Instead, the covenants temporarily restrict Defendants, for a limited period after selling their business, from forming or participating in a competitive ***business,*** which is defined both by the ***functions*** of the business's products ***and the "social networking platforms" for which they are sold***. Doc. # 1-3, Notice of Removal, Ex. H. (Decl. of Andrew Trader), Decl. Ex. B, at 18-19, Decl. Ex. C, at 11 & Ex. D, at 11. As these elements are found nowhere in the Copyright Act, Zynga's claims are not preempted.

**D.  Defendants' Averments Regarding Aftershock Innovations are Irrelevant**

Finally, contrary to Defendants' assertion, no "misnaming" of Aftershock in Zynga's complaint took place. Both then and now, all signs point to Aftershock as either the new business alias of the reorganized CLZ Concepts or the successor of the former CLZ Concepts partnership. Among other indications, (1) Defendant Chen is the agent for service of process for the reorganized CLZ Concepts at *the original San Francisco business address* of the CLZ Concepts partnership (*compare* Doc. # 1-3, Notice of Removal, Ex. H (Decl. of Andrew Trader), Decl. Ex. B, at 28, *with* Ex. I (Decl. of Jedediah Wakefield), Decl. Ex. 3); (2) CLZ Concepts and Aftershock share the same business address (Doc. # 15-2 (Def.'s Request for Judicial Notice, Ex. A), at 2); (3) all three CLZ Concepts partners started the venture that eventually produced Mafia Live! and Aftershock Innovations (*see* Doc. # 2, Notice of Removal, Ex. T (Decl. of Jeff Chen), ¶¶ 19-20 & Doc. # 3, Notice of Removal, Ex. V (Decl. of James Zhang), ¶¶ 13-14); and (4) the URL www.clzconcepts.com, even at this time, leads directly to the Aftershock website. Kelly Decl.[8], Ex. 1, at 1-6.

Together, these facts lead inexorably to the conclusion that CLZ Concepts is either operating as Aftershock or was succeeded by Aftershock. If the latter is true, Aftershock rightfully can be held to answer for a breach of the non-compete restrictions, if and when it is

---

[8] "Kelly Decl." refers to the Declaration of Jennifer L. Kelly in Support of Plaintiff Zynga Game Network, Inc.'s Reply Memorandum of Points and Authorities in Support of Motion to Remand, filed herewith.

1  ever joined in this action. *See* Doc. # 1-3, Notice of Removal, Ex. H (Decl. of Andrew Trader),
2  Decl. Ex. B, at 26-27 ("The terms and conditions of this Agreement shall inure to the benefit of
3  and be binding upon the successors and permitted assigns of the parties."). Zynga's alleged
4  "plan" to join Aftershock as a defendant if in fact it is a separate entity thus does absolutely
5  nothing to convert this case into a copyright case.[9] Even if the addition of Aftershock to this case
6  somehow could magically transform its nature, Defendants provide absolutely no authority for
7  their assertion that federal jurisdiction can arise based on the *possibility* that a third party might be
8  joined as a defendant at some time in the future. And there is none, of course, since federal
9  jurisdiction must be determined based on the matter that is actually before the Court.

### III. ZYNGA'S CLAIM FOR UNFAIR COMPETITION IS NOT PREEMPTED

Defendants' contention that Zynga's unfair competition claim is preempted is even more baseless.

First, Zynga's claim for unfair competition is—and, under California law, *can* be—based solely on Defendants' breach of contract, not any other independently wrongful act such as copyright infringement.[10] This is in stark contrast to the unfair competition claim asserted against Zynga in *Psycho Monkey, LLC v. Zynga Game Network, Inc.*, wherein the plaintiff actually alleged a copyright claim and tacked on an unfair competition claim based on the same facts. Doc. # 15-5 (Def.'s Request for Judicial Notice, Ex. D), at 10-11. Indeed, as Zynga noted in that case, the plaintiff explicitly premised its unfair competition claim on "violations of state and federal copyright laws." *Id*. at 12. That case does not involve a breach of a non-competition agreement or any other type of contract claim. Thus, the fact that Zynga obtained a ruling that the

---

[9] Defendants assert that Zynga acknowledged that Aftershock is not a "d/b/a" of any defendant. Although it makes no difference with respect to federal court jurisdiction, Defendants' assertion is incorrect as a factual matter. Kelly Decl. ¶¶ 3-4.

[10] Defendants' reliance on *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) for the proposition that Section 17200 claims cannot be based on a breach of contract is misplaced. *Sybersound* actually states that a breach of contract may properly form the predicate for a state law unfair competition claim, provided the breach also constitutes unlawful, unfair or fraudulent conduct within the meaning of California Business and Professions Code Section 17200. *Id.* Zynga has asserted that breach of the valid non-competition provisions of the parties' agreements constituted an unlawful business practice in violation of Section 17200. Doc. # 1-2, Notice of Removal, Ex. A (Complaint), at 5 ¶ UC-2.

unfair competition claim in that case was preempted means nothing in the present case.

Moreover, Defendants ignore that the unfair competition claim in this case is premised upon a kind of competition that the California courts have explicitly recognized is unfair. As explained above, California makes an exception to its strong public policy against restraints on competition for promises not to compete made in connection with the sale of a business—the very promise at issue here. The rationale for this exception stems from "the buyer's need to protect the value of the good will that he has acquired. In effect, the seller promises not to act so as to diminish the value of what he has sold." Restatement 2d (Contracts) § 188, cmt. f; *see also Strategix, Ltd.*, 142 Cal. App. 4th at 1072 ("Section 16601's exception serves an important commercial purpose by protecting the value of the business acquired by the buyer.").

As the California Court of Appeals has held:

> In the case of the sale of the goodwill of a business it is 'unfair' for the seller to engage in competition which diminishes the value of the asset he sold. In order to protect the buyer from that type of 'unfair' competition, a covenant not to compete will be enforced to the extent that it is reasonable and necessary in terms of time, activity and territory to protect the buyer's interest.

*Monogram Indus., Inc.*, 64 Cal. App. 3d at 698 (citation omitted). Accordingly, there is little doubt that breach of a valid non-competition obligation in accordance with Section 16601 also gives rise to a claim for unfair competition under California law—and, in turn, contains the necessary extra element to defeat preemption.[11]

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[11] It is worth noting that the very discussion of whether Zynga has asserted *sufficient* allegations of unlawful, unfair or fraudulent behavior should be brought in a motion to dismiss, or more properly a state court demurrer, rather than argued on a motion to remand.

## **CONCLUSION**

For the foregoing reasons, Zynga respectfully requests that the Court remand this matter for disposition before a California state court, and award Zynga its fees and costs.

Respectfully submitted,

Dated: May 21, 2009           FENWICK & WEST LLP


By:     /s/Jedediah Wakefield
                Jedediah Wakefield

Attorneys for Plaintiff
ZYNGA GAME NETWORK INC.